# SUPREME COURT.

DANIEL D. CONOVER agt. THE MAYOR, &C., OF NEW-YORK, CHARLES DEVLIN and others.

SAME agt. THE MAYOR, &C., OF NEW-YORK, CHARLES DEVLIN and JAMES C. WILLETT, Sheriff, &c.

The court first having jurisdiction of a litigation, should retain it and carry it to a conclusion, unless its powers be inadequate to give all the relief required.

An attempt by a party to a suit to divert the litigation to another court, unless for good cause, should be restrained by the court first having possession of it; and the court first in possession of it should in this manner draw to itself all the litigation on the subject, between the same parties.

This rule applies even where such party was brought involuntarily into the first court as a defendant; but where he was plaintiff in the first court, it should be enforced strictly.

And where an attempt to resort to another court is made by a party after a decision in a preliminary matter, adverse to him, from which the opinion of the court as to his whole claim is shown to be unfavorable, it should be restrained for reasons still stronger.

A party will not be allowed, having ascertained the opinion of a court, to proceed in it, or resort to another at his option, as he finds the opinion favorable or adverse to him. The existence or absence of equity powers in the court secondly resorted to, will not alter the case or prevent the application of the rule.

In proceedings under 1 R. S. p. 125, § 61, to get possession of books and papers belonging or appertaining to an office, the decision of the judge is conclusive as to the parties to it, and their privies.

Where in such a proceeding, relative to the books and papers appertaining to the office of street commissioner of the city of New-York, between A. and B., the former was adjudged entitled to them, and a third party (the city) claiming to own them, because they were purchased for the office with its funds, attempted by injunction to restrain the use of them by A.

*Held*, that by the dedication of them to the use of the office, such party (the city) had relinquished all rights inconsistent with the possession of them by the officer, or their use for the purposes of the office.

*Held*, further, that the officer is entitled to the possession and use of such books and papers, for all the purposes of the office.

The possession and use of them by the officer, it would seem, is the right of the public, and of third persons interested in the office and the benefits of it, not less than of the incumbent himself for the time being.

NEW-YORK PRACTICE REPORTS. 551

Conover agt. Mayor, &c., of N. Y., Devlin and others.

*New-York Special Term, October,* 1857.
Motion for injunction, receiver, &c.

D. Dudley Field *and* Wm. Curtis Noyes, *for plaintiff.*

Charles O'Conor *and* James T. Brady, *for defendant Devlin.*

Richard Busteed *and* Daniel E. Sickles, *for Mayor, &c.*

Peabody, Justice.    This litigation has its foundation in the claims of the plaintiff Conover, and the defendant Devlin, respectively, to the office of street commissioner of the city of New-York.

The plaintiff claims the office by virtue of an appointment by the governor, and the defendant Devlin, claims it by virtue of an appointment by the mayor and aldermen, and each claims to be now the actual incumbent of the office.

No suit or legal proceeding to test their claims in this respect has ever been instituted by either; and no adjudication on the subject, of general obligation on them, or at all obligatory on third persons, seems ever to have been had.

There are, however, appertaining to said office of street commissioner, certain books and papers, maps and documents, which have been, and continue to be, the subject of litigation between them; and the claim of each, by virtue of the office, to the custody and use of them, not only has been the subject of legal proceedings and adjudication between them, but continues to constitute more or less directly the basis of these and the several other suits which will have to be considered herein.

On the 19th day of June, 1857, Conover applied to me, as a justice of the supreme court, under § 61 *of* 1 *R. S. p.* 125, for an order directing Devlin to show cause why he should not be compelled forthwith to deliver to him (Conover) the books and papers, maps and documents, belonging or appertaining to said office of street commissioner of the city of New-York.    That order was made, and was returnable on the 23d day of June; and the examination of the subject, including the taking of testimony and arguments of counsel, was proceeded with from day

to day until the 29th; and my decision was finally made, that said Conover was entitled to said books and papers, and an order was made that he should deliver them accordingly, forthwith.

On the hearing and trial, Mr. Conover was represented by Mr. Wm. Curtis Noyes and Mr. D. D. Field, and Mr. Devlin by Mr. James T. Brady; and the city of New-York, though not a party to the record, but claiming to be interested in the question, was represented throughout, by Mr. Busteed, corporation counsel, and Mr. D. E. Sickles.

In that proceeding, the whole subject of controversy was the right to the possession and use of the books and papers, maps and documents, belonging or appertaining to the office of street commissioner; the plaintiff herein claiming to recover possession of them, and the defendant (Devlin) denying the right of the plaintiff, and claiming himself to be entitled to retain and continue the use and custody of them.

That was a direct proceeding between the parties. The only question tried was, the right of the parties respectively to the books and papers, &c. The plaintiff claimed the right to them. The defendant denied the title of the plaintiff, and asserted his own title to them. The plaintiff in reply denied the title of the defendant and re-asserted his own right. Each asserted his own title and denied the title of the other, and the issues thus joined, were tried with much care and deliberation, and decided.

That decision has never been reviewed, as by law it might have been, by an appellate or revisory tribunal; has never been, in any manner, reversed or vacated; and, accordingly, the judgment there pronounced is in full force, and obligatory upon the parties.

It may be correct, or it may be erroneous; and, as to its binding effect upon the parties, while it remains, it is not important whether it is the one or the other. Neither party has appealed from it, and as to each, it is now I suppose, conclusive.

No other proceeding or suit, to the same end, has been instituted, and the decision or judgment then rendered cannot properly be reviewed, nor can the question there decided properly

Conover agt. Mayor, &c., of N. Y., Devlin and others.

be re-adjudicated in any collateral suit or litigation between the parties. It may be reviewed in a proper manner, (by *certiorari* for instance,) and, if incorrect, may be reversed ; but that must be by a direct proceeding for the purpose. Until that is done, however, it remains a valid and conclusive judgment, determining the rights of the parties in the premises ; as does, indeed, the decision of every court, even the humblest in the land, until reversed or vacated.

This proposition I do not understand is by any one in any manner denied. It may, at times, in the litigation that has followed, have been forgotten or lost sight of, and thus have been disregarded for a time, but I am not aware that any one has ventured to gainsay it, or claimed the reverse of it.

For the purposes of these suits, then, that judgment is conclusive upon the rights of the parties, Conover and Devlin, to the books and papers, &c.

The city, although represented on that trial, and throughout the whole of it by counsel, and heard at full length, still, if it have any rights not represented by the direct parties to the suit, is not concluded as one of the parties to the record. It could only assert its rights, and controvert the claims it should deem adverse to them, through the medium or representation of one or the other of the parties to the record.

So far, therefore, as its rights were properly represented by either of those parties, the city also is concluded, but as to any other rights not so represented it is not concluded.

In other words, although the city was present by its counsel, and heard at length throughout the trial, it could only be heard on the subject in controversy, the rights of the parties to the proceeding. It could not set up its own rights not connected with those of either party, if it had any such. It could take part in the discussion and trial of the questions embraced in the record before the court, and advocate or oppose the claims of either party ; but that is all it could do. The issues joined there are the only issues to which the city could speak, and on them only was it heard. So far, therefore, as a decision for or against one of these parties binds it as being represented there

by the party as to the right passed upon, it is concluded.   In short, that, like any other judgment, 'binds conclusively only the parties to it, and their privies.   If the city have rights to that property independent of the office and of the officer, those rights remain probably unaffected.

It is true, that a want of jurisdiction would invalidate all I did there, as to the parties as well as strangers, but that objection is not taken here, either in the pleadings or the points submitted, nor was it on the argument.   My jurisdiction in that matter, then, must be deemed to be admitted, or at least undisputed here.

What rights had the city which were not connected with the office or officer ; for as to those only, is it not bound by the decision in the statutory proceeding?   The statute under which I was acting, provides a remedy by which a successor to an office may get possession of "any books or papers belonging or appertaining to such office."   It follows that the officer has a right to the possession of such books and papers.   The petition by which the proceeding was inaugurated, and all the subsequent papers and measures, had reference to the books and papers, and described the things sought as "belonging or appertaining to the office of street commissioner of the city of New-York."   The claim was limited not only to those books, &c., but the claim to *them* was, in effect, only to be possessed of them to the extent to which they belonged to the office.   As to "the books and papers belonging or appertaining to the office of street commissioner of the city of New-York," what rights had the city independent of and against the street commissioner?   For one or the other of those parties, it was conceded on all hands, in that proceeding, as it is in these suits, was street commissioner ; and all agreed there, as all agree here, that the actual street commissioner was before the court, and the city, therefore, was represented, so far as that officer may represent it in a matter of the kind.

To ascertain exactly the dividing line between the rights of the city and those of the street commissioner, would require too much time for the present occasion, and is not necessary ; it is

sufficient at this point to say, that they having been dedicated to the uses of the office, the city had no rights to them, inconsistent with the possession and use of them by the officer, whoever he might be. It will hardly be contended that he had no rights; that the city could wholly divert the records, " books and papers appertaining to the office," from the officer; and as Conover was not attempting, by the proceeding before me, to establish what were the rights of the officer over them, or to acquire any stated definite right over, in, or to them, but only to acquire the possession or control, by which he might exercise the rights which appertained or belonged to the office, and limited his claim to that, more or less; it seems to follow that the claim he made can hardly be questioned by the city more than Devlin.

This is the whole breadth and scope of his claim, and of the decision on it, and the whole end and purpose of the process in execution of that judgment, the enforcement of which was arrested by the injunction from the court of common pleas.

That process could not, in its nature, nor could the proceedings in which it issued, by any means give to Conover any other rights than those which that officer (the street commissioner) by virtue of his office would have; and he having been adjudged for the purpose of that proceeding to be the officer, it follows inevitably that he had the rights incident to that character. It is not important to ascertain what those rights were; no issue was or is made on that point. Whether they were greater or less, they were what he asked, and all he was attempting to acquire and all he could acquire; and it follows that the general restraint imposed against the pursuit of that remedy under the statute, and against his having anything to do with the books, &c., was a restraint contrary to his rights. His prayer, in substance and effect was, that being street commissioner, he might be invested with such control over those articles as he, by virtue of said office, was entitled to. I had decided that he was such officer, and of course he was entitled to such control over them as the office gave him; and without deciding or inquiring what those rights were, I had ordered the officer to produce

them, that I might give to him the power of exercising those rights, whatever they might be, more or less.

The rights of the city (if it had any, except through the office) commenced only where the rights of the office terminated. As to its rights connected with the office, it was represented before me by the officer, and was concluded by the decision there. As to its other rights, (if it have any,) they are of comparatively little importance, are entirely subordinate to those of the office, to the use of which they had been dedicated, and afford no ground for an interruption of the possession, or a restraint of the use of them by the officer.

The history of the legal proceedings on this subject is important in considering this motion for an injunction and receiver.

The proceeding before me, relative to the possession of the books and papers, was commenced by Conover on the 19th of June, and on the 10th of July my decision was made, that he was street commissioner, and entitled to the books and papers.

On the 27th of June, the city commenced a suit in the supreme court, against Conover, and obtained *ex parte*, an injunction restraining him from taking possession of the books and papers, by which the proceedings before me were interrupted for several days. On the 13th of July, that injunction on motion was dissolved. On the 16th of July a *certiorari* was obtained *ex parte*, by which proceedings before me were stayed until the 18th, when it was superseded, after argument.

On the 14th of July, a resolution was pending before the board of councilmen, to deliver the books and papers into the possession of the corporation counsel, and instruct him to allow Devlin alone to use them, apparently intended to defeat the proceeding before me ; and Conover then commenced the earlier of these suits against Devlin and the corporation, procured, *ex parte*, an injunction restraining the passage of the resolution, and also restraining any act to defeat that proceeding, which injunction is still in force.

On the 18th of July, a suit in the common pleas was commenced by the city against Conover and the sheriff of the county, and an injunction procured, restraining Conover, his counsellors,

attorneys and agents, from receiving or interfering with, and the sheriff from taking or interfering with the books, &c., and Devlin from delivering them to him.   At the time of the service of the injunction on Conover, the warrant issued by me for the production of the books, &c., was in the hands of an officer for service, and he proceeded to bring before me certain of the books, after the service of the injunction.   For this an order was made that Conover be imprisoned for contempt.   About the same time, the court after solemn argument, decided to continue the injunction, and refused to dissolve it.

On the 20th of July, the city filed a supplemental bill in the common pleas, alleging the service of the original complaint and injunction, Farrington's seizure of the books, Bertholf's possession of some of them by my order, Mr. Field's advice to disregard the injunction, Conover's entry into the apartments devoted to the office, danger of loss or damage to the books and papers, stating the proceedings before me, and alleging that they were without jurisdiction, and praying for an injunction against Farrington, Bertholf and Mr. Field, which was granted, *ex parte*, and afterwards, on argument, dissolved as to Mr. Field, but continued and a dissolution refused, as to Farrington and Bertholf.

On the 13th of August, Conover filed a supplemental complaint in this suit, (commenced as above on the 14th of July,) adding as parties Farrington and Bertholf, and stating that the action was commenced July 14th ; that since that time I had issued warrants in the statutory proceeding, and that under one of them some of the books had been brought before me, and that further proceedings were prevented by the interference of the city and Devlin, and that plaintiff apprehended that they would continue to prevent the execution of the warrant and the completion of the proceeding, and demanding judgment that the warrant might be executed, and the obstacles thereto removed, and a receiver of the books, &c., might be appointed, and directed to allow Conover to use them ; and an injunction against the city and Devlin, their agents, &c., restraining them from interfering with the books, &c., and from doing anything to pre-

vent their delivery to Conover, or the execution of the warrants, except by a review of the statutory proceedings before me, and an injunction against Bertholf and Farrington, restraining them from delivering the books to any person except·pursuant to the warrant, was demanded.   On this an order was made to show cause why an injunction, as asked, should not be granted and a receiver appointed, and a temporary injunction was allowed in the meantime.

There was also a suit commenced in the supreme court by Conover against the city and Devlin, and the sheriff, stating Conover's claims to the books, &c.; the proceedings before me; my decision thereon; the issuing of the warrants; the inability of Conover to get the books; threats by Devlin to dispossess him of the apartments by force; the possession by Devlin of certain bids for contracts with the city; the appointments to office made by him; the commencement by Conover of the suit in this court on the 14th of July; the suit by the city in the common pleas on the 18th of July, and the proceedings therein; and demanding judgment that the city be restrained from proceeding in the common pleas; that the sheriff be enjoined from executing process therein; and that Devlin be restrained from performing duties as street commissioner until his right to the office should be established on *quo warranto.*

In that suit also an order ·was made that defendants show cause why an injunction should not issue and a receiver be appointed, and a temporary injunction was allowed in the meantime.

On the two orders to show cause just mentioned, a motion is made for the injunction prayed for in the complaints and for a receiver, and that motion I am now to decide.

The necessity for something which shall confine the litigation in this matter to some one court is most apparent from the above narrative.   The two courts—this and the common pleas—have decided the same question differently, and are diametrically opposed to each other.   This court, Mr. Justice ROOSEVELT presiding in the suit by the city against Conover, commenced June 27th, dissolved an injunction on grounds substantially the same

Conover agt. Mayor, &c., of N. Y., Devlin and others.

as those on which a similar one was afterwards sustained in the common pleas. The case before Mr. Justice ROOSEVELT is reported in 5 *Abbott R.* 171, and his opinion is characterized by his usual eminent ability and research. The common pleas, Judge INGRAHAM presiding, in an opinion of great ability, gives the reasons for the decisions in that court. The facts on which the two decisions proceed, differ but little, if at all, and that little, if either way, is in the direction opposite to the difference of the decisions and opinions. The one before Mr. Justice ROOSEVELT did not contain, originally, a statement of the statutory proceedings, which were at the time the argument of the motion was commenced before him, incomplete. The case made in the common pleas did contain a statement of those proceedings in the plaintiff's complaint, and that I had decided that Conover was the officer and entitled to the books and papers. Both of them took cognizance of those proceedings, however, and considered them, as is shown in their opinions respectively; and the two cases were not, I think, even in this respect, *materially* different. The decision in this court preceded that in the common pleas, and was urged on the argument of the case in that court, as appears from the opinion, not only as an authority, but *as establishing by adjudication the rights of the parties.* But the argument did not prevail, and the injunction, on solemn argument dissolved and denied in this court, was subsequently granted, and on like solemn argument, confirmed within fifty days afterwards in that court.

Here are the decisions of the two courts directly in conflict on the same subject matter. Which is correct is not a matter of inquiry here. We are not reviewing either of those decisions. I should feel great diffidence at approaching such a task as reviewing the decision of either of those eminent judges; and that no such duty is imposed on me is matter of the most hearty self-gratulation.

The two courts, thus starting from the same point, have taken opposite directions. Other cases of difference of opinion, equally striking, between that court and this, and between judges of the two courts, have occurred in the course of this litigation re-

peatedly, but an enumeration of them is not necessary. The instance I have given shows the impracticability of continuing parallel litigations of the same matters in the two courts. Indeed evidence or illustration of such a fact seems hardly necessary, for it is within the observation of every one, that on the complicated and vexed questions which come under the investigation of courts of justice, (and this is certainly embraced in that class,) courts, like individual minds, must differ frequently. Every dissent of a member of a court, and every reversal by an appellate court of the decision of its inferior, are instances of difference of judicial opinion on exactly the same facts, stated in exactly the same words; and neither of these cases of difference is of rare occurrence. Both, on the contrary, are very common.

The two courts thus pursuing opposite courses of decision, it is manifestly desirable that the litigation in one should be suspended, and the whole controversy carried to its conclusion in the other. It is more than desirable. It is indispensable to a reasonable, orderly and decorous administration of justice.

How shall this be accomplished? How shall it be decided in which court it shall be continued? And when that is decided, how shall the decision be enforced? Assuming that the two courts have jurisdiction to the same extent, and can administer justice with equal facility and benefit, the rule that the court first having cognizance of the subject shall retain it and draw the litigation wholly to itself, seems to be properly applicable. It is perfectly free from odium, is consistent with the fullest comity, and the most delicate respect, for the other tribunal. If there be no reason in the constitution of the courts why one is more competent under all circumstances, existing or likely to arise, to assume the whole of this controversy and conduct it to an issue than the other, priority in acquiring possession of the case may with propriety be allowed to determine in which it shall proceed. On the subject of jurisdictional power, there can surely be no objection to this court, succeeding as it does to all the powers of the court of king's bench, and having, on every subject within the jurisdiction of a state court, the fullest

Conover agt. Mayor, &c., of N. Y., Devlin and others.

common law jurisdiction, it has also all the powers of the late court of chancery in the administration of equity; and, territorially, its jurisdiction for every purpose is co-extensive with the state.

The jurisdiction of the common pleas, on the contrary, for many purposes, is limited to the county, and although it may now have jurisdiction over all the parties to this litigation, circumstances may not improbably arise in which the addition of a party residing or tarrying without the county, or any one of numerous other causes, may make the more comprehensive jurisdiction of this court desirable, and necessary to the complete determination of the controversy.

The suit by the city against Conover in this court, after the decision by Mr. Justice ROOSEVELT, was discontinued. The precise time when this was done does not appear from the papers before me, but I think that it may have been before the suit in the common pleas was commenced.

After that decision, however, and before the commencement of the suit in the common pleas, the earlier of these suits was commenced in this court by Conover against the city and Devlin. Whether it was commenced before or after the discontinuance of the one in this court brought by the city, does not, I think, appear; but the decision by Mr. Justice ROOSEVELT in that suit, dissolving the injunction on motion, was made on the 13th, and the earlier of these suits was commenced on the 14th day of July; so that the probability is, and I suppose I may assume, in the absence of evidence to the contrary, that that suit of the 13th was in existence on the 14th. This court then, first became possessed of the subject of this litigation by the commencement of that suit on the 27th of June last; and since that time, has never been without at least one suit on that subject between the same parties. The aid of this court was then invoked by the city in a suit against Conover. The city having thus selected the forum in which it chose to implead him, he, when on the 14th of the following month (July) he had occasion for the first time, to invoke the aid of a court of general jurisdiction, commenced his suit here, whither he had been already

brought, and where he then was a defendant in a suit by the same parties, on the same subject matter.

In the suit first commenced in this court by the city against Conover, the rights of the plaintiff therein to the books and papers as against Conover, were the basis of the claim; and it is apparent, from the opinion of Mr. Justice ROOSEVELT, on the motion for an injunction, that both the title of the plaintiffs to the books, &c., and the rights of Conover as the officer, were set up and discussed, substantially as they have been since.

In commencing his suit against the city and Devlin, on the 14th of July, he was bound, by a regard for propriety, if no other law, not to seek to wrest the litigation from the court in which it had been commenced, by appealing to another court for the relief he required, and accordingly he sought counter relief, as he should do, in this court, then having the litigation before it. It was the right of the party first appealing to the court to select his tribunal. The city had exercised that right, and Conover was bound to follow to the same court, and not by seeking another, to embarrass and entangle matters already more than sufficiently complicated.

All the suits between these parties, from the one commenced by the city on the 27th of June, have been on the same subject, the rights of the parties to these books, &c. In all, the city has claimed to withhold them by virtue of its ownership, they having been bought and paid for with its funds; and, in all, Conover has claimed possession of them by virtue of his office; and in all, since the decision in his favor in the statutory proceeding, he has claimed that as an adjudication of his right.

It was urged on the argument in opposition to this motion, that the pleadings in the suit or suits in this court, at the time the suit in the common pleas was commenced, were not sufficiently comprehensive to enable the court to determine the whole matter in controversy. I am not certain that that is the case; but it is not necessary for the purposes for which I am referring to those suits, that they should have been. I do not attempt to show or say that any two of the suits, or the pleadings in them, have been exactly and in all respects alike. They have

been, all of them, concerning the same subject matter however; all have had the same general end in view; on the one hand, Conover has always endeavored on the same ground to get the books, &c. ; and, on the other, the city has endeavored, on the same ground to defeat his claim, and keep them from him; and if any facts since deemed material on either side, were not contained in the earlier pleadings, they could readily have been introduced by way of amendment or supplement, and their absence furnished probably no necessity for even a new suit, and if it did, it certainly furnished none for flying to a new court.

It seems to me quite evident, from what has been said, that this whole litigation should be drawn to one or the other of the two courts; that it cannot, with advantage to the litigants, or without detriment to the public interest, be suffered to proceed as it has done—a step in one court in one direction followed by a step in the other court in an opposite direction; and that it should be arrested in one or the other.

How shall this be accomplished ?   Neither court will, or perhaps can, interfere directly with the action of the other.   Either may, however, operate on the suitors before it; and the mode urged in this motion seems to me quite proper.   At all events, an injunction is the means sanctioned by precedent in such cases. It is the measure in familiar use for that purpose, and I see no reason why it should not be adopted in this case.

It was urged on the argument, that injunctions in such cases had only been used to restrain suits in courts of law, and that such a remedy as to suits in courts of equity had not been adopted in practice ; and the fact must be very much so ; for until recently, no instance has occurred in this country, or in that whence we derive our jurisprudence, of the existence of two courts of equity in the same state, having concurrent jurisdiction in cases of the same class.   Of course, the practice cannot have obtained under such circumstances; but there is no reason in principle, why in cases of this kind, it should not be applied to a court of equity as well as to a court of law.   Is there any doubt that a court of equity would restrain proceedings against its officers for acts done in their official character,

if those proceedings were in another court having equity pow-
ers, as readily as if they were in a court having only common
law powers? If, for instance, a receiver or a guardian, or a
committee of a lunatic, appointed in one of our courts, were
prosecuted in any other court for his official acts, is there any
doubt that the court from which he derived his authority would
enjoin such a suit; and would it make any difference whether
it was pending in a court having equity as well as common law
powers, or in one having common law powers only?

So, in the case of a bill of peace, which this case in all re-
spects very much resembles, is there any reason to suppose that
if the suits, which it would otherwise be proper to restrain,
were pending in courts having equity as well as common law
powers, they would not for that reason be restrained? If so in
this state, where all courts have equity as well as common law
powers, the beneficent remedy known by that name must be
abandoned, certainly where the suits to be restrained are in more
than one court.

And so in every case where the restraint was demanded for
any other reason than because the court in which the suit was
pending lacked the power of administering equity. Restraint
for that reason cannot now be required in a system like ours,
where all courts have those powers. The existence of equity
powers in the courts will do away with the necessity for such
restraint in a large class of cases, because the absence of those
powers was often the cause for restraining proceedings in such
a court, on the ground that the controversy could not properly
be ended and disposed of without the exercise of them; but it
is only in cases of that class that the existence of equity powers
in the courts is at all material in determining whether the pro-
secution of suits in them shall be restrained. Suppose, for in-
stance, that an equity suit were commenced in this court against
ten or twelve defendants, and one defendant, having occasion
for affirmative relief which would properly authorize the filing
of a cross bill, should commence a suit in that nature in the
common pleas, and another should file one in the superior court,
and another should file his in the city court of Brooklyn, and

another should file one in a court of New-Jersey, and another in Connecticut, all those courts having plenary equity as well as common law powers, who can doubt that some one of the courts would be bound to restrain the parties before it, from proceeding in the other courts, and draw the entire litigation to itself? Who would be found to insist that the parties plaintiff in none of those suits should be restrained, because forsooth, the courts had equity as well as common law powers? I may add, who would doubt which court should issue this mandate, this court having first had possession of the subject matter of the controversy, and having ample powers to determine it in all its parts? Undoubtedly, the case of *Grant* agt. *Quick*, (5 *Sandf. S. C. R.*, 622,) was very properly decided; and if a case were wanting to illustrate the necessity of confining litigation between the same parties on the same subject matter, to the court in which it originates, when the court has ample power to dispose of it legally and equitably, (which is all there is in that case, and all it is properly an authority for,) I would commend the litigations I am considering, as an illustration never to be surpassed. It is not a little remarkable, if an authority so apposite as that escaped the attention of counsel so astute, in this suit in the common pleas. In that case (*Grant* agt. *Quick*,) it appeared that a suit had been brought by Quick against Grant, in the common pleas, to compel the surrender of certain securities, and Grant, (the defendant in the common pleas,) commenced a suit in the superior court against Quick for some relief, properly matter for a cross bill, and obtained an injunction restraining the suit in the common pleas, and, on motion, it was dissolved by the court, by Mr. Justice DUER, saying: "The prior institution of that suit (meaning *Quick* agt. *Grant* in the common pleas,) and its actual pendency, are regarded by me as conclusive reasons for granting the motion in its full extent," &c. "It may be true, that all the matters set forth in this complaint cannot with propriety be set forth in an answer," &c., * * * "or if contained there, cannot be made the ground of the affirmative relief to which the plaintiff deems himself entitled; but there is one obvious and conclusive reply.

If affirmative relief cannot be granted," &c.,   *   *  .  *   " upon his answer, he may file a complaint in the common pleas, in the nature of a cross bill, and that court will stay proceedings in the first suit, until both are at issue, so that both may be decided at the same time," &c.   *   *   *   " There will be, in reality, but one controversy. The prior jurisdiction which that court has acquired I have no right, and will not attempt to disturb." *How fatal would these principles have been to the injunction, and the whole suit in the common pleas!* The correctness of that decision, and of the opinion of Mr. Justice DUER, will never be questioned by a lawyer. " This decision," says the Reporter, " was approved by the judges of that court, and those of the supreme court in this district, and the common pleas." . I am sure it must have been. It is *still* approved by *this* court ; and it having been cited in this matter in the common pleas, and the case there showing what appears fully here, that there was at least one suit pending in this court between the same parties respecting the same subject matter, and that another of an earlier date, by the same plaintiffs as the one there, was either still pending here, or had just been discontinued after a decision in it adverse to the plaintiffs, I should have expected that the learned first judge of that court would have given utterance to the operations of his mind, in language not unlike that of our eloquent and venerable cotemporary of the superior court, and that he would have embraced the opportunity to reiterate his commendation of the spirit of enlightened equity and elevated comity on which the decision in that case, proceeds.

My conclusions are :—

I. That the right to those books and papers as to the parties hereto, Devlin and Conover, is, by virtue of the decision in the statutory proceeding between them, *res adjudicata*, and that they are concluded thereby.

II. That as to the city, it has rights to them, but that those rights are chiefly for the purposes and uses of the office to which they have been dedicated by it.

III. That as to all the rights the city has on that ground, it was represented by the officer in that proceeding, and as to them it was bound by the decision therein as a privy.

IV. That as to the rights of the city other than those it has through the office, (if it have any others,) they are entirely subject to those of the office, and are only the residuum, or what remains after all the purposes of the office, for which they are or may be serviceable, have been answered.

V. That as to those rights, which, at most are rights to them only as articles of merchandize, and not for their contents or value as connected with the office, they being subordinate to the rights of the office, they constitute the basis of no legal claim against the officer, and particularly of none to an adverse possession of them, or to a restraint of the use of them by him, and therefore, constitute no reason against the granting of the motion for an injunction in this case.

VI. As to the course of litigation on this subject:—that the court first having possession of the case—its power being adequate to the administration of complete justice in the premises—should retain its jurisdiction and confine the litigation to that forum.

VII. That efforts by either party (and particularly by the party invoking the aid of the court first in possession of the case) to divert the litigation to another court, should be restrained, and that for that purpose an injunction is the usual and proper remedy.

VIII. That it is most especially the duty of the court not to permit a transition from it to another court by such a party, after an adverse decision on his claim in the court to which resort is first had by him.

IX. That the practice in courts of equity, of confining litigation on a subject to the court in which it originates, is of peculiar value in this case; that it seems to be necessary to a consistent, orderly, and effectual administration of justice; and especially so to that desideratum in all cases like this, a speedy termination of controversy.

X. That the propriety of the remedy in a case of this kind

is not affected by the fact that the court secondly acquiring jurisdiction of the matter, has equity as well as common law powers.

The injunction asked, therefore, must be granted; but no sufficient ground for the appointment of a receiver shown, nor will arise from the injunction now ordered, and that part of the motion must be denied.

## SUPREME COURT.

### EZRA H. BENEDICT agt. RALPH WARRINER and others.

The only law regulating *sheriff's fees* in civil actions is contained in the Revised Statutes, (2 *R. S.* 645, § 38.)

Although many of the services for which fees are there provided, and most of the process therein named, have become obsolete since the adoption of the Code, yet sheriffs must be allowed for services now, the same rates given by the Revised Statutes, for services of similar character, previous to the adoption of the Code.

The service of a *notice of the object of suit*, with the summons in a foreclosure case, is provided for by the Code, (§ 131,) and when served by the sheriff his certificate of service is made proof of the fact, (§ 138.) But the statute gives no fee to the sheriff for such service; nor is there anything in the sheriff's fee bill for which it is a substitute, or to which it bears any analogy. As to that service, the sheriff stands precisely as any other person.

When, therefore, such service is actually rendered by the sheriff, or by any person, other than the party or his attorney, there is no objection in allowing to the prevailing party a reasonable sum for such service, (no *copy* of notice can be allowed,) as *disbursements*, if separately stated and duly verified.

For such service, one-half the sum allowed for serving the summons, is deemed sufficient; that is, twenty-five cents for each defendant served.

When such notice is served by the sheriff, the *certificate* of service should be embodied in the return to the summons; but whether it be or not, no fee is provided for it, nor can any be allowed. Unlike the certificate to the summons, it is not a return to process.

The sheriff is entitled for a return to the summons issued to each county twelve and a half cents; and for every mile travelled in going (one way) to be computed from the court-house, six cents; but only one travel fee can be allowed upon each writ.