## Case No. 17,775.

### WILMER et al. v. ATLANTA & R. AIR-LINE RY. CO. et al.

[2 Woods, 409;[1] 3 Am. Law T. Rep. (N. S.) 29.]

Circuit Court, N. D. Georgia. Dec. 7, 1874, and May 25, 1875.

RAILROAD COMPANY—APPOINTMENT OF RECEIVER—DEFAULT IN INTEREST—CONFLICTING JURISDICTIONS—STATE AND FEDERAL COURTS.

1. A railroad company having its residence and principal office at Atlanta, Ga., conveyed to trustees, by one deed, all its line of road extending from Atlanta through South Carolina to Charlotte, N. C., and other property to secure the payment of the principal and interest of 4,248 bonds of $1,000 each, issued by the railroad company. The railroad was an indivisible and inseparable piece of property, which could not be divided without injury to its value. The trust deed conferred authority on the trustees, and made it their duty, in case the railroad company failed to pay either the interest or principal of the bonds, to take possession of the property conveyed by the trust deed, and advertise and sell the same (or such part as might be necessary) at Atlanta to pay the sum in default. Held, that on default made in the payment of interest, and a demand upon the trustees by the bondholders that they should take possession of the trust property, and a failure of the trustees to do so, the court, on a bill filed by the bondholders to require them to execute the trust would compel them to take possession of the trust property or appoint a receiver for that purpose.

[Cited in Taylor v. Life Ass'n of America, 3 Fed. 470; Central Trust Co. v. Chattanooga, R. & C. R. Co., 62 Fed. 953.]

2. Such appointment would be made even though there was no probable deficiency of the trust property to pay the debts secured by the trust deed.

3. When it was represented that the trust property had fallen into the hands of two different receivers, accountable to three different courts to the manifest detriment of the trust estate, that fact of itself was considered a sufficient reason for the appointment of a receiver for the whole property, if the court had jurisdiction to make such appointment.

[Cited in Corning v. Dreyfus, 20 Fed. 428.]

4. The circuit court of the United States for the Northern district of Georgia has jurisdiction to appoint a receiver for the entire line of said company's road and other property included in the deed of trust, whether within or without the state.

[Disapproved in Texas & P. R. Co. v. Gay, 26 S. W. 610. Cited in Lycoming Fire Ins.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Co. v. Wright, 55 Vt. 530; Straughan v. Hallwood, 30 W. Va. 288, 4 S. E. 402.]

5. Two states may, by concurrent legislation, unite in creating the same corporate body.

6. Where a bill was filed, the prayer of which was, that this court would construe a trust deed executed by a railroad company, and compel the trustees to execute the trust or appoint a receiver to take possession of and administer the trust property, and service of subpoena had been made on the railroad company, which was the principal defendant, and a restraining order had been allowed and also served on the railroad company, enjoining it from delivering possession of the trust property to any one except a receiver appointed by this court in the case thus commenced: Held, that by these proceedings the court acquired constructive possession of the trust property, and that possession thereof, taken under color of process from another court, in a suit commenced after the proceedings above mentioned, was in contempt of the process and jurisdiction of this court, even though the other court first obtained actual possession of the property. Per Woods, Circuit Judge.

[Cited in Howlett v. Central Carolina Land & Imp. Co., 56 Fed. 162; Reinach v. Atlantic & G. W. R. Co., 58 Fed. 45; Wheeler v. Walton & Whamm Co., 65 Fed. 722. Approved in Adams v. Mercantile Trust Co., 15 C. C. A. 4, 66 Fed. 620.]

7. Contra, service of process gives jurisdiction over the person; seizure gives jurisdiction over the property; and, until the property is seized, no matter when the suit was commenced, the court does not have jurisdiction over it. Thus, when two suits between different parties, raising different controversies, and having different purposes in view, are commenced in courts of coördinate jurisdiction, and the possession of the property, which is the subject of the suit, is necessary to the relief asked in each case, that court which first seizes the property acquires jurisdiction over it, to the exclusion of the other, no matter when the suits were commenced or process in personam was served. Per Bradley, Circuit Justice.

[Approved in East Tennessee, V. & G. R. Co. v. Atlantic & F. R. Co., 49 Fed. 610. Criticised in Adams v. Mercantile Trust Co., 15 C. C. A. 4, 66 Fed. 620.]

This was a cause in equity which was first heard at chambers in Savannah, on the 5th and 7th of December, 1874, by WOODS, Circuit Judge, on the motion of complainants for the appointment of a receiver.

A. T. Akerman and L. E. Bleckley, for the motion.

P. L. Mynatt and H. H. Marshall, contra.

WOODS, Circuit Judge. The complainants, Skipwith Wilmer and August Richard, allege that they are the owners and holders of certain of the bonds known as first mortgage eight per cent. bonds of the Atlanta & Richmond Air Line Railway Company, which are secured by a deed of trust on all the property and franchises of the defendant company, and they file this bill in behalf of themselves and all other holders of similar bonds who shall be entitled to avail themselves of the benefit of the suit. The purpose and prayer of the bill is, that the trust deed, given to secure said bonds, may be so construed that the trustees therein named, or their substitutes to be appointed by the court, may

be compelled to execute the trusts created by the deed of trust, by taking possession of said railway and appurtenances, and all property granted by the deed of trust, and selling the same at public auction for the payment of the principal and interest of all the bonds secured by said trust deed, and that pending the suit, some suitable person may be appointed receiver to take possession of said railway and all its property conveyed by the trust deed, with power to operate and manage said railway, and receive all its earnings and income during the pendency of the suit, and with such other power as to the court shall seem right and proper.

The cause now comes on for hearing upon the motion of the complainants for the appointment of a receiver as prayed in the bill. It is alleged in the bill that the defendant company is a corporation created by, and existing under the laws of the states of Georgia, South Carolina and North Carolina, and having its principal office and place of business in Atlanta, in the state of Georgia. It further appears from the bill that, by an act of the legislature of Georgia, approved March 5, 1856, a railroad company, to be known as "The Georgia Air Line Railroad Company," was incorporated and authorized to build, equip and enjoy a railroad from Atlanta to the South Carolina state line, in the direction of Anderson court house. By an act of the general assembly of South Carolina, approved December 20, 1856, the Air Line Railroad Company of South Carolina was incorporated, with authority to construct a railroad from the line of the state of Georgia, in the direction of the city of Atlanta, to Anderson court house, and thence to some point of connection with the Charlotte and South Carolina Railroad, in the direction of Charlotte, North Carolina, and to equip and enjoy the same. The seventh section of this act of incorporation provides that it shall and may be lawful for the said company to combine or unite with any other railroad company having the right so to do, and to consolidate the management of the companies so combining, if they shall deem it necessary, and to make any regulations for the use of or combination of the interest or management of said roads as the public good may require, or to them may seem meet. By an act of the legislature of North Carolina, approved August 3, 1868, it was provided that the Air Line Railroad Company in South Carolina was authorized "to extend, construct, equip, and operate its road within the limits of North Carolina, from any point on the South Carolina line to the town of Charlotte, in North Carolina." These three acts being in force, the legislature of Georgia, by an act approved September 7, 1868, declared "that the Georgia Air Line Company be and they are hereby authorized to consolidate, combine, or unite with any other railroad company or companies directly or indirectly connecting therewith, or to unite the management of said companies, upon such

terms, conditions, and provisions as shall be agreed upon by and between such companies so consolidated or uniting, and thereupon such consolidated or united companies shall be invested in this state with all the rights and privileges conferred upon, and be subject to all the restrictions imposed by, the original charter of the said Georgia Air Line Railroad Company, and the amendments thereto, with the right to adopt such other or modified corporate name, and to increase and diminish the number of directors now provided, or as shall be determined on and agreed upon by such companies." And the legislature of South Carolina, by an act approved September 18, 1868, entitled "an act to amend an act entitled an act to incorporate the Air Line Railroad Company in South Carolina," declared, sec: 2, "that if said company shall, as authorized by its charter, consolidate or unite with any other company or companies, it may adopt such other or modified corporate name and increase or diminish the number of directors now provided for as shall be deemed best and agreed upon by such companies."

In pursuance of the authority granted by these acts of the legislatures of Georgia and South Carolina, it is alleged that, on June 20, 1870, the Georgia Air Line Railroad Company, and the Air Line Railroad Company in South Carolina, by an agreement in writing, duly executed between said companies, were consolidated and united into one corporation under the name of the "Atlanta & Richmond Air Line Railway Company," and from thenceforward became one body corporate under that corporate name, and the owner of all the property and entitled to all the rights, privileges and franchises which had belonged to the two companies out of which it was formed. It is further alleged that the Atlanta & Richmond Air Line Railway Company, having thus become the owner of all the property which had belonged to the two companies named, and being in need of a large sum of money to complete and equip its road, conveyed to trustees by deed of trust "the entire railway of said company, extending from the city of Atlanta, in the state of Georgia, to the city of Charlotte, in North Carolina, together with all its franchises, lands, buildings, machinery, rolling stock, materials and other property, real and personal, wherever situated, and however held, and whether now owned or hereafter acquired; and also the annually accruing net income of said company," the purpose of which said deed of trust, and it so declared, was to secure the payment of 4,248 coupon bonds of $1,000 each, to be issued by the company, with interest payable semi-annually at the rate of eight per cent. per annum. It was made the duty of the trustees named in the deed of trust, upon default of payment of either the principal or interest of the bonds. to take possession of the trust property and its revenues and administer the same, and to sell the property or such part thereof as might be necessary to

pay the sum of money in default. The bonds secured by the deed of trust were duly executed and issued and negotiated by the Atlanta & Richmond Air Line Railway Company. The bill further states that on the 1st of January, 1874, the company made default in the payment of its interest that day due, that the interest coupons were presented for payment at the offices of the company in New York and Atlanta, and payment thereof was refused. More than sixty days having elapsed from the time of such default, the complainants, together with the holders of other 2,342 of said bonds, gave notice to R. A. Lancaster and Alfred Austell, the surviving trustees under said deed of trust, of the default in the payment of interest, and requested them to proceed and execute the trusts created by said deed, and take possession of the trust property and the revenues of the company, as authorized and required by the deed of trust, to sell the property and apply the net proceeds of the entire trust property to the payment of the principal and interest on the bonds secured by said deed of trust, as therein provided. Although five months have elapsed since the said request, the trustees have taken no steps towards the execution of said trusts or the enforcement of the bondholders' rights under the deed of trust, but have utterly failed and neglected so to do. It is further alleged that the Atlanta & Richmond Air Line Railway Company is managed not so much in the interest of its bondholders and stockholders as in the interests of the Richmond & Danville Railroad Company, whose president is also the president of the Atlanta & Richmond Air Line Railway Company: that it has been made subservient to the interests of the Richmond & Danville Company, greatly to its own injury and the damage of the complainants and other bondholders. It is also alleged that the Richmond & Danville Railroad Company claims to have some interest in the property covered by the deed of trust, and to have a lien therefor on said property, and that the complainants apprehend that the Atlanta & Richmond Air Line Company, and the Danville & Richmond Company are acting collusively in regard to said lien, and that it is their intention to undertake to enforce it to the great wrong and injury of complainants and other bondholders. It is unnecessary here to notice further the allegations of the bill. The motion is for the appointment of a receiver, to take possession of the entire line of the defendant company's road, running from Atlanta, Georgia, to Charlotte, North Carolina, over portions of three states.

The first question which presents itself for solution is, should there be a receiver for the property of the defendant company or any part of it? The rules which govern the discretion of courts in the exercise of this power are well settled. Where there is a trust fund in danger of being wasted or misapplied, a court of equity will interfere upon the application of any of the creditors, either in his own behalf or in behalf of himself and the other creditors, and, by the appointment of a receiver, or in some other mode, grant relief. Jones v. Dougherty, 10 Ga. 274. The appointment of a receiver is not necessarily predicated upon the apprehended loss of the debt. It would be sufficient to allege that the trustee appointed refused to perform the trust. McDougald v. Dougherty, 11 Ga. 586. Where there has been negligence or improper conduct on the part of a trustee, and the fund is in danger, the appointment of a receiver upon the application of the cestui que trust is a matter of right. Jenkins v. Jenkins, 1 Paige, 243. The rule in courts of equity in regard to appointing a receiver of mortgaged property is, that it will be granted in all cases where the income is required to meet the incumbrance, and is at the present time being so applied as not to be legally applicable to reduce the incumbrance. 2 Redf. R. R. 361.

To apply these well settled rules to the question in hand: As already stated, the trustees have, for more than five months, neglected, although requested, and although the deed of trust made it their duty to do so, to take possession of the property of the defendant company. The bondholders have as clear a right to have executed that power of the trust deed, which requires the trustees to take possession of the property upon default in payment of interest as any other covenant in the deed. If the trustees refuse to perform this duty, the cestui que trust has the right to apply to the court to compel them to do it, or appoint some one who will. And this right is independent of any probable deficiency of the trust property to pay the debts secured by the deed of trust. The application for a receiver in such a case is simply a demand by the beneficiaries of the deed that the trust be executed according to its terms.

It has been made to appear upon the hearing that the interest for January and July last is in default, amounting to $339,840. It is also shown that upon an execution issued on the judgment of a court of the state of Georgia for little more than $1,000, the railroad of the defendant company has been sold piecemeal in the several counties of the state of Georgia through which it runs. It is also shown that since the filing of the bill and the service of process in this case, and since the allowance of a restraining order, a suit has been instituted in the superior court of Fulton county, Georgia, in which a receiver has been appointed for so much of the property of the defendant company as lies within the state of Georgia; that suits have been instituted in the United States circuit court for North Carolina, and in the United States circuit court for South Carolina since the service of process in this action, in which receivers have been appointed for the property of the company in these states respectively. It is

true that the same person has been appointed receiver in North and South Carolina, but a different person is the receiver appointed by the state court in Georgia. Here are three distinct and independent courts claiming possession of different portions of the railroad and other property of the defendant company, and it is in the actual possession of two independent receivers, living in different states and accountable to different tribunals. The averment of the bill is, that this railroad property from Atlanta, Georgia, to Charlotte, North Carolina, is one inseparable and indivisible piece of property; that it is a portion of a great through route, and derives its chief value and business from that fact. The legislation already cited, of the three states through which it runs, shows that it was intended to be one undivided and unbroken line, and the deed of trust, which is the basis of this proceeding, covers the whole line of the road from one terminus to another. It is obvious that it would be a most unfortunate case that such a property should be held by two different receivers, accountable to three different courts. In fact, when we consider that a large part of the property of the company consists of rolling stock, which must necessarily pass from one end of the road to the other, and which must be used on the three divisions into which the road is divided by its administration in three-different courts, it appears to be well nigh impossible to administer the affairs of the road and render accurate and satisfactory accounts. It is evident that such a divided control must result in crippling the operations of the road, destroying its business and reducing its receipts, and placing in jeopardy the security of its creditors.

This unfortunate condition of affairs, resulting from the action of three independent courts, would of itself be, as it appears to us, sufficient ground for the appointment of a receiver for the entire property by this court, if the power and jurisdiction of this court to do so is clear. First, then, has this court the power to appoint a receiver for real property outside the limits of the state? Involved in this question is another, to wit: Is the Atlanta & Richmond Air Line Railway Company one corporation in Georgia, and another and distinct corporation of the same name in South Carolina, or is it the same corporate body in both states? It seems to me quite clear that the purpose of the legislation of Georgia and South Carolina, in reference to this corporation, already set out in this opinion, was to create a single corporate body. Pursuant to the provisions of the acts of these two states, the two original companies did consolidate and combine, they took a new name, and organized a new and single board of directors. Having done this, the new consolidated company, under its new name, and acting by its one president, has executed a single deed of trust, covering the entire line of railway from Atlanta to Char-

lotte, and including all the personal property, which formerly belonged to the two companies that united to form the new one. It is clear that the legislation of the two states was passed to authorize the making of one corporate body out of two, and that the two corporate bodies so authorized have united, and have, ever since the 20th of June, 1870, the date of the consolidation, been acting as one company.

The only remaining question in this branch of the inquiry is, could the legislatures of two different states unite to create one corporate body? This question is distinctly answered by the supreme court of the United States in the case of Railroad Co. v. Harris, 12 Wall. [78 U. S.] 82. The court says: "We see no reason why several states cannot, by competent legislation, unite in creating the same corporation, or in combining several preëxisting corporations into a single one. The Philadelphia, Wilmington & Baltimore Railroad Company is one of the latter description. In the case of that company against Maryland, Chief Justice Taney, in delivering the opinion of this court, said: 'The plaintiff in error is a corporation composed of several railroad companies which had been previously chartered by the states of Maryland, Delaware and Pennsylvania, and which, by corresponding laws of the respective states, were united together, and form one corporation under the name and style of the Philadelphia, Wilmington & Baltimore Railroad Company. The road of this corporation extends from Philadelphia to Baltimore.'" We reach the conclusion then that the Atlanta & Richmond Air Line Railway Company is one and the same corporate body in Georgia and South Carolina, and the legislation of North Carolina hereinbefore referred to shows that it has the same rights and functions in that state that it has in South Carolina. The bill avers, and the proof shows, that this corporate body, existing in two states and owning property in three, has its residence and principal office at Atlanta, Georgia.

The inquiry then recurs: Can this court, having obtained jurisdiction over the person of this corporate body, exercise jurisdiction over its real and personal property outside the limits of the state, by the appointment of a receiver to take possession of the entire property, both within and without the state? There is a precedent for the exercise of such jurisdiction. In Ellis v. Boston, H. & E. R. Co., 107 Mass. 1, the court appointed a receiver for the entire line of the defendant company's road, which extended from Boston, in Massachusetts, to Fishkill, in New York. It is well settled that realty out of the state may be reached by acting on the person. Mitchell v. Bunch, 2 Paige, 606; Ramsay v. Brailsford, 2 Desaus. 587, note. In the case in Paige, it was held that if the person of the defendant is within its jurisdiction, the court has jurisdiction as to his property

situated without such jurisdiction. When the property is situated outside the territorial jurisdiction of the court, the court may require assignments to be made by the defendant to the receiver. Chipman v. Sabbaton, 7 Paige, 47; Cagger v. Howard, 1 Barb. Ch. 369; Story, Confl. Laws, § 463; Northern Indiana R. Co. v. Michigan Cent. R. Co., 15 How. [56 U. S.] 243.

As the property of the defendant company is one entire and indivisible thing, and as it is all covered by one deed of trust, there seems to be no good reason why this court should not appoint a receiver for the whole, even though a part of the property may extend into another state. The court having jurisdiction of the defendant can compel it to do all in its power to put the receiver in possession of the entire property. If other persons outside the territorial jurisdiction of this court have seized the property of defendant, the receiver may be compelled to ask the assistance of the courts of that jurisdiction to aid him in obtaining possession, but that is no reason why we should hesitate to appoint a receiver for the whole property. We think the courts of other jurisdictions would feel constrained, as a matter of comity, to afford all necessary aid in their power to put the receiver of this court in possession.

Finally, it is objected that the superior court of Fulton county, Georgia, and the United States circuit courts of South Carolina and North Carolina, respectively, have taken jurisdiction of the property of the company within their respective states, and their receivers are in possession, and this court ought not to interfere by the appointment of a receiver of its own. The record shows that the bill in this case asking this court to undertake the administration of this trust property, and to take possession of it by its receiver, was filed on the 30th of October, 1874. It is shown that service was made upon the defendant corporation on the 31st of the same month, and notice of the motion now on hearing was served on the same day. It further appears that on the 5th of November, upon the application of the complainants, and upon the showing that there appeared to be danger of irreparable injury from delay, a judge of this court directed that, upon the execution of a bond by complainants with sufficient sureties in the sum of five thousand dollars, conditioned according to law, a restraining order issue enjoining and restraining the Atlanta & Richmond Air Line Railway Company, its officers and agents, from handing over or delivering possession of said railway or its appurtenances, or any of its other property, to any person except a receiver appointed by this court in this suit. The bond was given by the complainants as required by the court, and the restraining order was issued, and on the 9th of November served on the Atlanta & Richmond Air Line Railway Company. The case in Fulton superior court was not filed until November

10th, and no prayer was made for a receiver until Garner, a defendant in that case, applied for one in his answer, which was filed on November 20th. The suits in the United States circuit courts of South and North Carolina were not commenced until the 16th of November.

Upon this state of facts, which court first acquired jurisdiction of this trust property? Is actual seizure of the property necessary to the jurisdiction of the court? In my judgment it is not. In this case I think the jurisdiction of the United States circuit court for the Northern district of Georgia first attached to the property, because the suit in that court was first commenced and service of subpœna made, and because, (1) one of the main objects of the suit was to obtain possession of the property, and such possession was necessary to the full relief prayed by the bill; and (2) because, by the service of the restraining order enjoining the defendant company from delivering possession of the trust property to any person except a receiver appointed by this court in this cause, the court acquired constructive possession, and from the moment of the service of the restraining order the property was in gremio legis. I think these positions are sustained by the authorities.

I subjoin a reference to a number of cases, in all of which the subject under consideration is discussed, and in some of which the precise point is decided and the views above expressed are sustained: Smith v. McIver, 9 Wheat. [22 U. S.] 532; Wallace v. McConnell, 13 Pet. [38 U. S.] 151; Peck v. Jenness, 7 How. [48 U. S.] 624; Williams' Adm'x v. Benedict, 8 How. [49 U. S.] 107; Wiswell v. Sampson, 14 How. [55 U. S.] 52; Taylor v. Carryl, 20 How. [61 U. S.] 583; Green v. Creighton, 23 How. [64 U. S.] 90; Freeman v. Howe, 24 How. [65 U. S.] 457; Chittenden v. Brewster, 2 Wall. [69 U. S.] 191; Memphis v. Dean, 8 Wall. [75 U. S.] 64; Taylor v. Taintor, 16 Wall. [83 U. S.] 370; New Orleans v. Steamship Co., 20 Wall. [87 U. S.] 392, 393; Atlas Bank v. Nahant Bank, 23 Pick. 489; Wadleigh v. Veazie [Case No. 17,-031]; Ex parte Robinson [Id. 11,935]; Bell v. Ohio Life & Trust Co. [Id. 1,260]; Bill v. New Albany R. Co. [Id. 1,407]; Parsons v. Lyman [Id. 10,780]; Stearns v. Stearns, 16 Mass. 171; Conover v. Mayor of New York, 25 Barb. 513; Clepper v. State, 4 Tex. 242; Thompson v. Hill, 3 Yerg. 167; Bank v. Rutland & B. R. Co., 28 Vt. 478; Merrill v. Lake, 16 Ohio, 405; Ex parte Bushnell, 8 Ohio St. 601; State v. Yarbrough, 1 Hawks. 78; Gould v. Hayes, 19 Ala. 448; High, Rec. 38–41, and note. Especial attention is called to the cases of Wiswell v. Sampson, 14 How. [55 U. S.] 52; Chittenden v. Brewster, 2 Wall. [69 U. S.] 191; and Bill v. New Albany R. Co., supra.

An examination of the cases cited will show that actual seizure of property has not been considered necessary to the jurisdiction

of the court in a case where the possession of the property is necessary to the relief sought. The commencement of the action and service of process, or according to some of the cases the simple commencement of the suit by the filing of the bill is sufficient to give the court jurisdiction, to the exclusion of all other courts. In this case, not only was the suit begun and process served before the commencement of any other suit, but the defendant railway company was actually enjoined by the order of this court from yielding possession of the trust property to any one except a receiver appointed by this court in this case. In my judgment, this restraining order gave this court constructive possession of the trust property, and a subsequent seizure of the same by any person on the order of any court whatever, in a suit subsequently begun, was a contempt of the process and jurisdiction of this court. If this court, upon the bill filed in this case, has the power to take possession of the entire property granted by the trust deed, as we have already decided it has, then the filing of the bill asking this court to take possession of and administer the trust property, and the service of process, excluded the jurisdiction of all other courts to take possession of and administer the same property or any part thereof.

Other questions than those noticed in this opinion have been argued at the bar, but it is not necessary to decide them in passing on this motion. I am of opinion that this court has jurisdiction to appoint a receiver for the entire property covered by the trust deed, and to administer the property for the benefit of all persons interested in the trust; that the jurisdiction of this court over the entire trust property attached before that of any other court; that all parties necessary to the hearing of this motion are before the court; that the bill and the evidence submitted establish a proper case for the appointment of a receiver, and the facts brought to the knowledge of the court imperatively demand its intervention; the interest of all parties requires that our jurisdiction, being thus exclusive over the subject matter, should be exercised, and that the motion for the appointment of a receiver for the whole trust property should be sustained.

In pursuance of the foregoing opinion, the court on the 19th of December, 1874, appointed John H. Fisher, Esq., receiver for the entire property covered by the deed of trust executed by the Atlanta & Richmond Air Line Railway Company. Fisher gave bond, as required by the order of the court, but was unable to get possession of that part of the trust property lying in Georgia. On the 24th of May, 1875, he applied to the United States circuit court, from which he received his appointment, then being held by Mr. Circuit Justice BRADLEY, and Mr. District Judge ERSKINE, for a writ of assistance to

enable him to get possession of so much of the trust property as lay within the Northern district of Georgia.

Upon this application the following opinion was delivered:

A. T. Akerman and L. E. Bleckley, for the motion.

P. L. Mynatt and N. J. Hammond, contra.

BRADLEY, Circuit Justice. This is a bill filed on behalf of first mortgage bondholders of the Atlanta & Richmond Air Line Railway Company, praying for a sale of the railway and appurtenances, and for a receiver to take possession of the property pending the suit. A receiver, Mr. John H. Fisher, was appointed by Circuit Judge WOODS, on the 9th of December last. On proceeding to take possession of the property, the receiver found a large and important portion of it, to wit: the depot and terminus in Atlanta, and the railway line in Fulton, and some other counties in Georgia, in the possession of one Lemuel P. Grant, as a receiver appointed by the superior court of Fulton county, a court of the state of Georgia having equity jurisdiction. Grant refused to surrender possession, and Fisher, under an advisory order of ERSKINE, District Judge, applied to the superior court of Fulton county for an order directing its receiver to surrender the property. This application was also refused. Fisher, the receiver appointed by this court, now applies by petition for a writ of assistance to put him in public possession of the property, and for an attachment as for a contempt against Grant, and other officials and directors of the railway company, for conspiring to keep the property out of the possession of the officers of this court. To this petition several answers have been filed by the parties implicated, and the question is thus presented whether this court can, and if it can, whether it will take the property in question out of the possession of a receiver appointed by a state court. Under ordinary circumstances, such a proposition would not be listened to for a moment. But the complainants and the receiver of this court rely on the special circumstances of the case as taking it out of the ordinary rule. Those circumstances may be briefly stated as follows:

The bill in this case was filed October 30, 1874, and a copy and notice of motion for injunction and receiver were served on the railroad company the next day. On the 5th of November, Judge ERSKINE granted a restraining order, which, on the 9th of the same month, was served on the company, and on Grant, then a director of the company, appointed on behalf of the city council of Atlanta, of which he was a member. On the 11th it was served on Buford, the president, and on Sage, the general superintendent, and was brought to the notice of Garner, a director. As before stated, the application for a receiver was not decided until the 9th of

December, 1874. Meantime other proceedings had taken place in the state courts, and especially in the superior court of Fulton county, which produced the complications that have arisen. In December, 1866, one Samuel B. Hoyt recovered a judgment in the Fulton county court against the Georgia Air Line Railway Company, of which the Atlanta & Richmond Air Line Railway Company is the legal successor by change of name, for the sum of $1,000 and costs, and fieri facias was duly issued under the laws of Georgia, not only in Fulton county, but Gwinnett, Habersham and Hall counties, and several levies were made on the railroad line in April, August and September, 1874, and the road was sold in distinct parcels to one William A. Russell. The sales were severally made in June, September and October, 1874. On the 5th of November, Russell transferred his interest to Garner, a director, as above stated, for the whole line of railroad in Fulton, Gwinnett, and Hall counties. Garner was put into possession by the sheriff on the 9th of November, 1874. On the next day, the 10th, the Atlanta & Richmond Air Line Railway Company, by its managing director, P. A. Welford, filed a bill in the superior court of Fulton county against Hoyt, the judgment creditor, Russell, the purchaser at sheriff's sale, Garner, the assignee, etc., to prevent their proceeding to take possession of the road. On the 20th of November, Garner filed a cross-bill in the same court, asking for the appointment of a receiver, which resulted in the appointment of Grant, on the 21st, and his taking possession on the 26th of the same month. Grant had resigned his position as director of the company on the 11th of November.

It thus appears that the bill in this court was filed before that in the superior court of Fulton county, but that a receiver was first appointed by that court, and that he was in possession when the appointment of receiver was made by this court. It also appears that the object of the two suits was different; in this court, it being the foreclosure of the mortgage and the sale of the property to satisfy the same, the possession sought being auxiliary to the main purpose; in the state court, the object was to set aside the proceedings and sale under the judgment of Hoyt, and to prevent Garner from keeping possession of the road. On the 2d of January, 1875, the complainants in this court filed an amended bill, making parties of Hoyt, Russell, Garner and Sage, and alleging that the proceedings in the superior court of Fulton county were collusive, and intended to frustrate the proceedings of this court. But suppose that the allegations of the amended bill are true, can this court arrest proceedings in a state court on the ground of their collusiveness? Must not the state court itself be applied to? We cannot assume or entertain the proposition that the state court will not do justice in matters within its jurisdiction. We are bound to suppose that it will not allow a collusive use of its process to be made by parties, but that it will set aside and declare null all such fraudulent proceedings.

Then the question remains pure and simple: Does the priority of commencing suit in this court for the foreclosure and sale of the mortgaged premises give the court constructive possession of the property, so as to nullify the subsequent possession taken by the state court, the respective objects of the two suits being different? It is too well settled to admit of controversy, that where two courts have concurrent jurisdiction of a subject of controversy, the court which first assumes jurisdiction has it exclusive of the other. But where the objects of the suits are different, this rule does not apply, although the thing about or in reference to which the litigation is had is the same in both cases. Thus an action of debt on a bond, an action of ejectment on the mortgage given to secure it, and a bill in equity to foreclose the equity of redemption, may be pending at the same time unless prohibited by some statutory regulation. The land mortgaged may be seized in execution by the sheriff in an action at law, even while the ejectment or the bill to foreclose is pending. A bill to foreclose is a personal proceeding, although it has reference to a specific thing. Its object is to put an end to an existing equity, and to procure a sale of the mortgaged premises. Possession may be taken in the course of the proceeding, but until it is taken, can it be said that the property is sacred from the touch of other persons or courts? The present case, then, is resolved to this: Had the Fulton county court power to appoint a receiver, and place him in charge of the property, whilst a bill to foreclose was pending in this court; or was it an interference with the jurisdiction of this court? It is perfectly evident that the controversy before that court is a different one from the controversy before this court. There it is a question of the validity of a sale under execution, and of the possession given by the sheriff in pursuance thereof; and that question arises between the Atlanta & Richmond Railway Company and the assignee of the purchaser. Here it is a question of the rights of bondholders, under a mortgage given by the Atlanta & Richmond Air Line Railway Company and the company, and arising between the bondholders and the company, and its officers and employés.

The controversy not being the same, nor the parties the same, there is no conflict of jurisdiction as to the question or cause. But, inasmuch as both controversies have ultimate respect to the possession of the railroad of the Atlanta & Richmond Air Line Railway Company, there has arisen a conflict of jurisdiction as to the thing or subject matter. It is important to know, therefore, whether this court had jurisdiction over the subject matter, namely, the railroad, when taken possession of by the receiver of the Fulton county

court, so as to make that taking an invasion of the jurisdiction and powers of this court. If it had, it will enforce that jurisdiction and assume the actual possession to which it gives the right. If it had not, then it will not interfere with the actual possession of the receiver of that court, though the rights represented by the litigants in this court be superior to those of both litigants in the state court, as those rights can be asserted when the possession of the state court has ceased. The reason that it will not interfere in such case is, that interference might create a collision between the two courts, which would be unseemly and contrary to the comity which should exist between them. The two courts are coördinate in jurisdiction, neither being superior to the other, and both being charged in. the respective cases before them with the due administration of the laws of the state of Georgia. The test I think is this: Not· which action was first commenced, nor which cause of action has priority or. superiority, but which court first acquired jurisdiction over the property. If the Fulton county court had the power to take possession when it did so, and did not invade the possession or jurisdiction of this court, its possession will not be interfered with by this court; the parties must either go to that court and pray for the removal of its hand, or having procured an adjudication of their rights in this court, must wait until the action of that court has been brought to a close, and judicial possession has ceased. Service of process gives jurisdiction over the person. Seizure gives jurisdiction over the property; and until it is seized. no matter when the suit was commenced, the court does not have jurisdiction. The alleged collusion and fraud of the parties cannot alter the case. It is a question between the two courts; and we must respect the possession and jurisdiction of the sister court. We cannot take the property out of its hands, unless it has first wrongfully taken it out of our hands. This, as we have shown, has not been done. The application for a writ of assistance and for an attachment must be· denied.

Our views may be somewhat variant from those of Judge WOODS, as expressed by him when the receiver was appointed. That question was different from the one now before us, which relates to the powers of that receiver to interfere with the possession of a portion of the road, in the hands of another receiver. Our decision does not necessarily conflict with his order, although our views may differ from his as to the power of the receiver. And in differing from Judge WOODS, we do so with much respect for his opinion. The question must be admitted to be one of some nicety; but we prefer that course which avoids collision with a state court when it coincides with our own convictions as to the law.

The authorities on the subject have been somewhat carefully consulted, especially the following: Smith v. McIver, 9 Wheat [22 U. S.] 532; Wallace v. McConnell, 13 Pet. [38 U. S.] 151; Williams v. Benedict, 8 How. [49 U. S.] 111; Hagan v. Lucas, 10 Pet. [35 U. S.] 400; Payne v. Drewe, 4 East, 538; Taylor v. Carryl, 20 How. [61 U. S.] 583; Pulliam ·v. Osborne, 17 How. [58 U. S.] 471; Buck v. Colbath, 3 Wall. [70 U. S.] 334; Watson v. Jones, 13 Wall. [80 U. S.] 679.

[For the proceedings on final hearing, see Case No. 17,776.]