## Case No. 10,780.

PARSONS et al. v. LYMAN et al.

[5 Blatchf. 170;[1] 32 Conn. 566.]

Circuit Court, D. Connecticut.    Oct. 16, 1863.

CONCURRENT JURISDICTION—COURT FIRST TAKING JURISDICTION—DEVISE IN TRUST TO EXECUTOR—COURTS OF PROBATE IN CONNECTICUT — EQUITY POWERS OF FEDERAL COURTS.

1. Where the jurisdiction of courts over a subject matter is concurrent, that tribunal which is first in possession of jurisdiction exercises it, to the exclusion of all others.

[Cited in Wilmer v. Atlanta & Richmond Air-Line Ry. Co., Case No. 17,775; Bruce v. Manchester & K. R. R., 19 Fed. 344; Reinach v. Atlanta & G. W. R. Co., 58 Fed. 44.]

2. Where a will appointed an executor and created a trust by saying, "I devise and bequeath to my executor herein named, in trust," certain property: Held, that the relation of the executor to the trust estate, as trustee, was the same as if he had not been named executor in the will, and as if the property had been devised and bequeathed to him in trust, by his individual name.

[Cited in Pomroy v. Lewis, 14 R. I. 352.]

3. The nature and extent of the jurisdiction of the courts of probate of the state of Connecticut over the accounts of a testamentary trustee, considered.

4. Such courts have control over all matters that properly pertain to probate tribunals, but a general grant of jurisdiction to them of all matters properly cognizable by such tribunals, does not embrace all the powers and duties of executors as such, or the dealings of testamentary trustees.

5. Such courts have no jurisdiction, by statute, over the administration of testamentary trusts, or over the settlement of the accounts of such trustees, or over any controversy between a trustee and a cestui que trust, pertaining thereto.

6. The equity powers of the courts of the United States cannot be abridged by state legislation.

7. A controversy between a cestui que trust and his trustee, touching the accounts of the latter for services and disbursements in the management of the trust, belongs peculiarly to a court of equity.

8. The settlement, by a probate court, of the accounts of a testamentary trustee, must, in order to bind the cestui que trust, be made upon due previous notice to him of the time and place of settlement.

This was a motion, founded on bill and answer, in a suit in equity [by Joseph H. Parsons and others against David Lyman and others], to dismiss the bill for want of jurisdiction in the court to entertain the suit. [Prior to this a motion had been made to have the names of certain infants interested in the suit, and who had not been made parties to it, inserted in the bill. The motion was denied. Case No. 10,779.]

SHIPMAN, District Judge. On the 24th of October, 1848, Samuel Parsons, of Durham, in the state of Connecticut, died, leaving a large estate, and a last will and testament. By this will the defendants in this bill were appointed his executors. They

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

qualified and proceeded to settle the estate in the court of probate for the district of Middletown, that tribunal, under the law of Connecticut, having exclusive original jurisdiction thereof. The settlement of the estate, so far as that court had exclusive jurisdiction, was substantially completed on the 20th of November, 1849, by the adjustment of the executors' accounts, after due notice of the time and place of hearing, to all parties interested, according to law. But the connection of the defendants with the property left by the deceased and disposed of by his will, did not terminate with the settlement of the estate, as a mere testate estate in the appropriate tribunal, for they were not only appointed executors by the will, with the usual powers of executors, but, by the instrument itself, they were made special trustees of a large portion of the property. After providing for his widow, and disposing of a single article of personal property by way of bequest to a daughter, the will provides as follows: "All the rest, residue, and remainder of my estate, real and personal, of every nature and description, that shall belong to me, or to which I shall be in any way or manner entitled, at law or in equity, at the time of my decease, subject to the foregoing provision for my said wife, I give, devise, and bequeath to my executors hereinafter named, and to their heirs, executors, administrators, and assigns, in trust." Then follow various provisions defining the trust (which was for the benefit of the testator's children and their heirs), directing as to its execution, and conferring, in particular instances, discretionary powers upon the trustees as to the amounts to be paid to the cestuis que trust from time to time. It will be seen, from this statement, that the defendants sustained two relations to the will and the estate of the deceased, namely, that of executors, and that of trustees. As executors it was their duty to prove the will, to give the requisite bond, with the aid of appraisers to prepare and file an inventory, to pay the funeral expenses and debts of the deceased, and the disbursements necessary in the progress of administration, and to perform all that the law requires of those who administer on testate estates, including the final settlement of their accounts in the court where all their proceedings were had. All these duties the defendants, as executors, performed, the last one being completed on the 20th of November, 1849, when their accounts as executors were adjusted, and substantially closed. From that time to the present, they have continued to discharge their duties as trustees. For this latter service they have claimed compensation, and have deducted the same from the income of the estate in their hands. The will creating the trust expressly provides, that they shall be allowed a fair compensation for their services in the administration of the trust, and exempts them from giving bonds therefor, although, by the law of the state, they were

required to, and did, give bonds for the faithful performance of their duties as executors. The present bill is brought in this court by the cestuis que trust, who are citizens of the state of New York, alleging, that the defendants, or one of them, David Lyman, upon whom most of the care of the estate has fallen, have charged and retained, out of the trust funds, an unreasonable sum for such services, and praying an account. The defendant Lyman has filed an answer, setting forth the will, and the various proceedings in the court of probate, showing the action of the defendants touching the estate, both as executors and trustees, and, upon the facts thus set up in the answer, the defendants move to dismiss the bill for want of jurisdiction. The objection to the jurisdiction of this court must rest upon one of two grounds: Either, first, that the original jurisdiction of the court of probate for the district of Middletown is exclusive over the subject matter of this controversy; or, second, that it is concurrent with that of this court, and that the court of probate has already become possessed of the litigation by an adjudication thereon or by proceedings at present pending therein. If the probate court has adjudicated upon this controversy, then it is res judicata; the subject of litigation is exhausted, and there is no jurisdiction left for this court to exercise. No appeal lies to it from the probate court, or from any other state tribunal; nor can it revise in any manner the doings of the local courts. If the controversy is pending in the court of probate, the jurisdiction of this court equally fails, from the well-known rule that, where the jurisdiction of courts is concurrent over a subject matter, that tribunal which is first in possession of it exercises its jurisdiction to the exclusion of all others.

The first question to determine is, whether the court of probate for the district of Middletown has exclusive jurisdiction of the subject matter of this controversy; and, in deciding this point, it is not necessary to consider the question whether or not the circuit courts of the United States have concurrent jurisdiction with the state probate courts over the accounts of executors and administrators. For, as already intimated, I hold that the relation of the defendants to this trust estate, as trustees, is the same as if they had not been named executors in the will, and the property had been devised and bequeathed to them in trust by their individual names. It would, of course, have been competent for the testator to confer this trust upon them by his will, and still name any other person as sole executor of the latter. In that case, there would have been no clashing of duties and powers, between such executor and the trustees. The duties and powers of the latter would have begun where those of the former ended. And, although the defendants are appointed by the will to act in both capacities, this fact does not obliterate the distinction which the

law makes between the duties and powers that pertain to these respective offices. The defendants seem to have properly recognized this distinction, by filing in the court of probate, since the settlement of their executors' account, an annual account, at first voluntary, and, since 1853, in accordance with a statute of Connecticut relating solely to guardians of minors, conservators, and trustees of estates. We come, then, to consider what are the nature and extent of the jurisdiction of the courts of probate of Connecticut over the accounts of these defendants as trustees. These courts in Connecticut have always been considered as possessing only a limited jurisdiction. 1 Swift, Dig. 606; Wattles v. Hyde, 9 Conn. 10, and cases there cited. The statute of Connecticut conferring jurisdiction upon these tribunals provides, that they "shall have cognizance of the probate of wills, the granting of administration, the appointing and approving of guardians, and shall act in all testamentary matters, and every other matter in which it shall be legal and proper for a court of probate to act, and shall have and exercise all the powers conferred on them by the act relating to the settlements of estates, by the law relating to guardians, the law relating to idiots, lunatics, and spendthrifts, the law relating to escheats, and all other powers conferred on them by law." This grant of jurisdiction, in its general provisions, clearly gives to these courts control over all matters that properly pertain to probate tribunals. But it does not necessarily include all matters that relate to the disposition of property under the directions given in a will. In Strong v. Strong, 8 Conn. 408, where real estate was given by will to the sons of the testator, and he ordered it to be divided by his executors among them, and such executors made a division and returned it to the court of probate, by which it was accepted and approved, on appeal from that decree, it was held, that the question whether the division was according to the will or not, was not a subject of probate cognizance, and, therefore, not within the appellate jurisdiction of the superior court. The opinion in that case will be found instructive, as stating the limitation of the powers of courts of probate, under the statutes of Connecticut, over the distribution of testate estates. There is a distinction made by those statutes relating to distribution, between testate and intestate estates, but this distinction was derived from the English law, and is not a mere arbitrary one made for local convenience. Even in intestate estates, under the English system, equity had a concurrent jurisdiction with the ordinary. "But equity has an exclusive cognizance of those cases in which there is an executor, and the residue is undisposed of, for then the executor is a trustee for the residue, and the ordinary cannot compel a distribution of it, because he cannot enforce the execution of a trust."

Williams, Ex'rs, p. 1783. In the case of Strong v. Strong, already cited, Peters, J., remarks: "Real estate is given by will, and is ordered by the testator to be divided. Two persons are appointed to divide the same. They are both alive, and have not neglected or refused to make the division. Whether they have done right or wrong, or whether the division be according to the will or not, are not questions of probate cognizance." These remarks and citations are made to show that a general grant of jurisdiction to courts of probate of all matters properly cognizable by such tribunals does not embrace all the powers and duties of executors as such. Much less would it embrace the dealings of testamentary trustees. "Courts of equity, from their inherent jurisdiction, assumed, from the beginning, the exclusive control over trustees in the discharge of their duties, whether affecting real or personal estate." Hill, Trustees, p. 42; Id. (Whart. Ed.) p. 50. The statute of Connecticut which I have already cited, embraces, in its enumeration of subjects committed to the probate courts, some that are peculiarly cognizable by courts of chancery generally, but it nowhere includes trustees of the character of the defendants. True, it says that they "shall act in all testamentary and probate matters;" but I apprehend that the administration of a testamentary trust like the one before us is, strictly speaking, neither a testamentary nor a probate matter. A trust of this character, whether created by will or by deed, is to be administered in the same manner, and the trustees in either case are amenable to the courts of chancery. The jurisdiction over such trusts and trustees has peculiarly pertained to these courts from the earliest times, and an act withdrawing them from that jurisdiction must be plain and specific. That jurisdiction will not be ousted by mere implication. I find nothing in the terms of the act in question which embraces these trusts, and, after a careful examination of the various statutes of Connecticut referred to in the act itself, and of those acts which directly confer powers on the court of probate, I find none giving jurisdiction to that court, of the character claimed by the defendants. There are several acts (Comp. St. Conn. 1854, pp. 490, 491) which empower these courts to remove and appoint trustees, but these special grants of power do not draw after them into these courts jurisdiction over the administration of the trusts.

But the defendants rely especially upon the act relating to guardians, trustees, and conservators (Comp. St. Conn. 1854, p. 283) which provides that such guardians, trustees, and conservators shall annually render their respective accounts to the court of probate for their respective districts, for the year next preceding the date of such accounts so rendered, and embrace therein a schedule of the estate, with various other particulars. The

same act also requires them to make oath to the accounts so rendered. Now, it is not necessary to inquire, in this place, whether this act, in connection with others relating exclusively to guardians of minors and conservators, confers upon probate courts exclusive jurisdiction over the accounts of the latter two. I confine myself to the accounts of trustees of the character in question. I have looked in vain through the statutes of Connecticut for any express power conferred on the courts of probate to settle the accounts of such trustees, or to adjudicate upon any controversy between the trustees and the cestuis que trust, pertaining thereto. There is no provision in the law requiring notice to be given to the parties interested, of the time and place of such settlement, or of any hearing thereon, as is required in the case of the accounts of executors and administrators. It is quite true, that the act of 1854 (Comp. St. Conn. 1854, p. 492) speaks of the final "settlement of the account of any executor, administrator, or trustee," and requires them to make oath thereto. But this latter act clearly refers to a different class of persons from that referred to in the act of 1853, requiring annual accounts to be filed. It omits guardians of minors and conservators, and includes executors and administrators. It includes trustees, eo nomine, but not, as I think, trustees created by deed or will, and administering trusts of the character of the one before the court. It evidently refers to the trustees of insolvent estates assigned for the benefit of creditors, or in course of settlement under the act of 1853 for the relief of insolvent debtors. The principal object of the statute of 1854 was to require the parties accounting to make oath to their accounts. But testamentary trustees were already required to make oath to their annual accounts, by the act of 1853, which imposes the duty of rendering them. Courts of probate are expressly authorized to call executors and administrators and trustees of assigned and insolvent estates to account, and to proceed, on notice to all parties concerned, to final settlement. I conclude, therefore, that no jurisdiction is given to courts of probate over the settlement of the accounts of trustees of the character of the defendants. The terms "shall render," in the act of 1853, do not necessarily imply that the tribunal to whom the account is to be "rendered" shall have power to judicially settle it. The rendition and the settlement of an account are distinct matters. As Chancellor Walworth remarks, in Westervelt v. Gregg, 1 Barb. Ch. 469, 476, "the rendering of an account by an executor or administrator, and the settlement of that account after it has been rendered, are not one and the same proceeding, though the latter is frequently a mere continuation of the former proceeding." But, if it be assumed that the requirement of the act of 1853, compelling trustees to file their annual accounts in the court of probate, draws after it the power enabling these courts to settle them, I apprehend that, so far as controversies between citizens of another state and trustees who are citizens of this state, arising on these accounts, are concerned, such jurisdiction of the court of probate would only be concurrent with that of this court. If the jurisdiction of the probate courts is made, by the statutes of the state, exclusive as against the other state tribunals, it by no means follows that it is exclusive as against this court. The equity powers of the courts of the United States cannot be abridged by state legislation. Though the jurisdiction of all matters properly cognizable by courts of chancery were to be confined, by the law of the state, to the court of probate, or to any other tribunal, the equitable jurisdiction of this court would remain untouched. If the controversy be between a citizen of another state and a citizen of this state, and exceeds five hundred dollars, exclusive of costs, and is properly cognizable by a court of chancery, under the general principles which regulate equity jurisdiction, this court is fully empowered, by the constitution and laws of the United States to take cognizance of it. The courts of the United States neither exercise nor claim any probate jurisdiction. That jurisdiction belongs exclusively to the state tribunals. It is local and domestic in its character, and rightfully belongs, where the federal constitution and laws have left it, with the local and domestic courts. But, over all matters of equity jurisdiction, properly speaking, the federal courts, when the proper parties are before them, and the required sum is in dispute, have original cognizance, concurrent with the courts of the several states. Nor can they be deprived of this jurisdiction or of any portion of it, by its absorption, through state legislation, into any particular state tribunals, or by any attempted transfer of the subjects of litigation from one department of jurisprudence to another, such as the transmutation by statute of a subject-matter of equitable jurisdiction into one of merely probate cognizance. That the controversy which arises on this bill and answer, between the cestuis que trust and their trustees, touching the accounts of the latter for services and disbursements in the management of the trust, belongs, upon general and acknowledged principles, peculiarly to a court of chancery, requires no argument or authority to prove. In this view of the case, this court would clearly have jurisdiction of the controversy, so far as it relates to the accounts of the defendants which have not been rendered in the court of probate previous to the filing of this bill. It cannot, with reason, be said, that the rendering to, and approval by, the court of probate, of the annual accounts of these trustees, is a continuous accounting, and thus a perpetual lis pendens, in that tribunal. Each separate annual account is a distinct

matter, and each presentation to, and approval by, the court of probate is a separate proceeding. It follows, therefore, that this court has jurisdiction of the accounts of the defendants which have accrued since the rendition to the court of probate of their last annual account next preceding the bringing of this bill.

We come now to consider the question of jurisdiction, so far as it relates to the annual accounts of these trustees, which had been rendered to the court of probate prior to the commencement of this suit. I think that the probate court had no power to "settle" these accounts, in any judicial sense. No such power is expressly conferred upon it, and none, I think, ought to be inferred from the mere fact that the trustees are required to render them in writing and under oath. There are cogent reasons why such a duty should be imposed on trustees. Their annual accounts, showing the apparent condition of the trust estate, and the manner in which it is managed by them, are thus put in possession of a public officer, and become a part of the files in his office, where they are open to the inspection of all concerned. The reason of the statute is, therefore, satisfied, without attributing to it the intent to confer the power to judicially settle and adjust the accounts, upon the courts of probate. But, if it is insisted that, upon a comparison of all the statutes of this state relating to trustees and trust estates, it is fairly to be inferred that this power is vested in the probate courts, then, I think, it must also be inferred, that it is to be exercised only on due notice to the parties interested. For, it was well said by Chief Justice Marshall, in The Mary, 9 Cranch [13 U. S.] 126, that "it is a principle of natural justice, of universal obligation, that, before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him. When the proceedings are against the person, notice is served personally or by publication; where they are in rem, notice is served upon the thing itself." I apprehend, that the settlement of the trustees' account is not, properly speaking, a proceeding in rem. It is a proceeding for the judicial adjustment of the charges for personal services and disbursements, of a person acting in a fiduciary capacity. It is analogous to the settlement of the accounts of executors and administrators, where notice is expressly required by the statutes of Connecticut. And, if notice is required in case of the latter, where the whole settlement of the estate is peculiarly within the cognizance of the court of probate, by the general principles of law regulating the jurisdiction of such tribunals, a fortiori should it be required in cases of special trust, created by will or deed, for the benefit of minors and married women, which the law and the courts regard with jealous solicitude. In a case involving the necessity

of commissioners on an insolvent debtor's estate giving notice, as an indispensable prerequisite to their exercise of jurisdiction, Judge Bissell, after remarking that the statute required such notice, says: "But this conclusion, drawn from the statute, may be maintained on general principles. The judgment of a court of even general jurisdiction cannot affect a person who had no notice to appear. As to him, the proceedings are coram non judice." Starr v. Scott. 8 Conn. 480, 484. In Case v. Humphrey, 6 Conn. 130, 139, Chief Justice Hosmer remarks: "The jurisdiction of a court, if it extend to the parties and subject matter, when legally before it, can never be called into exercise, unless through the medium of a process complete in law and duly served; or, in other words, the court must have cognizance of the process, before it can do any legal act in the cause." The fact, that, in cases like the one before us, there may be an appeal, if the cestuis que trust happen to learn of the proceeding in the court of probate in time, can make no difference. They are bound, if the position of the defendants here is correct, by the proceeding, until and unless an appeal is taken. I cannot infer, therefore, that the legislature has empowered the probate courts to judicially determine the rights of parties, often involving delicate and important questions, in a purely ex parte proceeding, in violation of what is termed, by numerous and eminent authorities, a fundamental principle of natural justice. If the power to judicially settle and adjust these accounts is to be deemed as inferentially given, then, I think, the duty to give reasonable notice of the time and place of its exercise, to the parties interested, must be deemed to be inferentially imposed upon the tribunal exercising it.

No notice appears to have been given to the plaintiffs of the intended settlement of these accounts. The answer impliedly admits this fact. They involve considerable sums, and their presentation and approval seem to have been simultaneous acts. No judicial proceeding was ever "pending" in the court of probate, upon which it could pronounce a binding decree on the plaintiffs, and, if it has assumed to exercise such a power, its exercise, so far as its judicial character is concerned, must be deemed void. But I do not infer that the court of probate has assumed to act judicially upon any of these trustee accounts, since November 20th, 1849. As already intimated, the answer concedes that no notice was given of the time or place of hearing, and the only entries on the record warrant the inference that the action of the judge of probate in the premises was rather clerical than judicial. I am aware of the case of Hiscox's Appeal, 29 Conn. 561. In the opinion of the court of errors, Mr. Justice Sanford remarks, that "there is no law which requires that notice shall be given to the ward to be present at the settle-

ment with the court of probate of his guardian's account, nor is the jurisdiction of that court, or the validity of its proceedings in regard to such settlement, affected by want of such notice, or by the absence of the ward; the only effect of such want of notice and absence being, to extend the time allowed by law for appealing from the decree of the court of probate to the superior court." I have felt some embarrassment from this language of the court, but I do not see that that precise question was necessarily involved in the case then before it. The superior court found that notice was in fact given, and that the party was present by attorney, but that he failed to appeal within the time limited by the statute. It also appears, that the statutes relating to guardians expressly confer jurisdiction upon the court of probate to settle their accounts, and to hold that this can be done without notice certainly should require an express and unmistakable act of the legislature. Whether the relation of guardian and ward is the same as that of trustee and cestui 'que trust, I am not prepared to determine. But, if the statute had expressly given this power over trustees' accounts and dispensed with notice, I think the question, whether it would not be a proceeding in which persons might be "deprived of their property without due process of law," would be a very grave one indeed. It follows, from these views, that the defendants must account in this court, for all charges for services and disbursements made and rendered in the management of this trust since the 20th of November, 1849. There may be some items, in the earlier annual accounts, that properly pertain to their duties and disbursements as executors. The trustees will be fully protected in the premises on the hearing.