RALPH G. MACY, PUBLIC WORKS COMMISSIONER, ET AL. *v.* CHARLES C. CUNNINGHAM ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued May 7—decided July 7, 1953

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the plaintiffs.

*Thomas F. Gallivan, Jr.,* for the defendants.

INGLIS, J.   The plaintiffs, the public works commissioner and the attorney general, respectively,

of the state of Connecticut, appealed to the Superior Court from a decree of the Court of Probate for the district of Hartford which appointed the defendants successor trustees of a trust created by the will of Ella Burr McManus. The case has been reserved for the advice of this court as to the four questions set forth in the footnote.[1]

The following facts have been stipulated: Ella Burr McManus died in 1906, leaving a will which was probated in the Court of Probate for the district of Hartford. The will, after providing for two life estates, disposed of the residue as follows: "I give such remainder and residue of my estate, in trust, to the Connecticut State Capitol Commission of Sculpture, in Connecticut, for the following uses, trusts or purposes. Such Commission shall erect and construct [a memorial] in the city of Hartford, Conn.

---

[1] "(1) In view of the statutory provisions . . . did the Probate Court err in finding and holding that a vacancy existed in said trusteeship of the Alfred E. Burr memorial trust by virtue of the abolition of the Commission on Fine Arts by Section 738(b) of the 1951 Supplement to the General Statutes?

"(2) By virtue of Section 278 of the Revision of 1949 and the applicable statutes . . . did the Probate Court err in refusing to find that the appellant, Ralph G. Macy, upon his appointment as Public Works Commissioner, by operation of law, became successor trustee of the Alfred E. Burr memorial trust?

"(3) If the answer to question No. 2 is in the negative, was the Probate Court, by virtue of Sections 738(b), 741(b) to 749(b) inclusive of the 1951 Supplement, Section 278 of the General Statutes of Connecticut, Revision of 1949 and the language of the residuary clause of the will, required by law to appoint the appellant, Ralph G. Macy, Public Works Commissioner, as successor [trustee] to the Commission on Fine Arts?

"(4) In view of the statutory provisions set forth in question No. 3 hereof, as well as the language of the will of the decedent, did the Probate Court err in appointing the appellees Henry F. Ludorf, Roy D. Bassette, Charles Wellington Walker, W. Langdon Kihn, Fulton Rindge, Charles C. Cunningham and the Hartford National Bank & Trust Company as successor trustees to the Commission on Fine Arts?"

as the members of said Commission shall conclude will be most appropriate to my father's memory and to perpetuate his name. It must be artistic in design and humane in purpose, preferably a drinking fountain for both human beings and animals, where the city or state shall furnish the site thereof, without expense to the fund; to be furnished with a suitable tablet stating that such memorial is a gift to the city in memory of Alfred E. Burr from his daughter. Should any other form of memorial be considered more beautiful, and beneficial to the city by such Commission I give my consent to abide by its decision, not knowing at this date, the future conditions of Hartford. There are so many atrocities in the name of art, inflicted upon our American cities, I direct especially that the most competent and gifted sculptor known to such Commission, shall be employed to design said memorial. I wish it to be as artistically perfect as possible."

On December 16, 1923, the commission of sculpture took over the administration of the trust. In 1947, the name of the commission was changed to "commission on fine arts." General Statutes, Sup. 1947, § 601i. As of January 3, 1951, the General Assembly abolished the commission on fine arts and created a public works department to be under the supervision of a public works commissioner. Cum. Sup. 1951, §§ 738b, 741b. Between 1923 and 1951 the commissions of sculpture and on fine arts had formulated several plans for a memorial to be erected in accordance with Mrs. McManus' will, but the erection of such a memorial had not been undertaken. When the matter of the appointment of a trustee as successor to the commission on fine arts came for a hearing before the Probate Court, the plaintiff Macy, who had been appointed public works commissioner, re-

quested the court to appoint him. Instead of doing so, the Probate Court appointed Henry F. Ludorf, an architect, Roy D. Bassette, an architect, Charles Wellington Walker, an architect, W. Langdon Kihn, an artist, and Fulton Rindge, a business man, all of whom had been members of the commission on fine arts at the time it was abolished, together with Charles C. Cunningham, director of Wadsworth Atheneum, and the Hartford National Bank and Trust Company. It is from the decree making this appointment that this appeal was taken.

The contention of the plaintiffs as to the first two questions propounded is that no vacancy in the trusteeship was created by the abolition of the commission on fine arts and that therefore the Probate Court was not warranted in appointing successor trustees. This is so, they contend, because the powers and duties formerly belonging to the commission on fine arts were transferred to the public works commissioner by the General Assembly as of January, 1951, and because § 278 of the General Statutes provides that, when a transfer of powers occurs, the department to which the transfer is made shall constitute a successor as to such matters and not a new authority.

It is true that the powers and duties formerly of the commission on fine arts were, in 1951, vested in the public works commissioner. It is to be noted, however, that these powers and duties were of two distinct kinds, each set forth in separate sections of the statutes. In the first place, § 3533 of the General Statutes imposed the duty on the commission on fine arts to exercise control over the design and location of public monuments, memorials, buildings and other structures given to the state and of portraits to be hung and statues to be placed in or on the capitol

building and grounds. This section was amended as of January 3, 1951, by substituting the public works commissioner for the commission on fine arts. Cum. Sup. 1951, § 747b. The second kind of powers granted to the commission on fine arts was set forth in § 3534 of the General Statutes. This section provided: "The commission may accept and execute any trusts, testamentary or otherwise, created or established for the purpose of procuring, erecting and maintaining any memorial on public grounds or within public buildings of the state or any municipality therein, and the court of probate in which a will creating any such trust has been proved may appoint said commission as trustee to execute such trust without requiring said commission to furnish a probate bond as such trustee. . . ." Other provisions in the section made it plain that the grant of power to act as trustee did not carry with it the power to place memorials upon public grounds without the consent of the General Assembly or of the municipality concerned. Section 748b, effective as of January 3, 1951, grants the same power to act as trustee to the public works commissioner.

The duty imposed upon the commission on fine arts by § 3533 was essentially different in nature from the power granted to it by § 3534. The first was a duty to exercise a governmental function. It was the duty of protecting state property. The second was merely the authorization of the commission to act as a trustee of certain charitable trusts. The grant of this power was analogous to the grant of power to a trust company, contained in its charter, to act as a trustee. By the terms of the statute, the commission was not bound to accept any trust; nor was the Probate Court bound to appoint it as trustee of any trust. When, acting pursuant to the authority con-

tained in § 3534, the commission accepted a trust, its duties and powers in the execution of that trust were those fixed by the instrument which created it, and not by statute. They were not powers or duties assigned to the commission by the General Assembly. This distinction is vital to the determination of the question whether, as claimed by the plaintiff, § 278 of the General Statutes operated to transfer the trusteeship in question from the commission on fine arts to the public works commissioner, so that the abolition of the commission did not create a vacancy in that trusteeship.

The act abolishing the commission (Cum. Sup. 1951, § 738b) stated expressly that its abolition was subject to the provisions of §.278. This section provides in subsection (a): "A department, institution or agency to which functions, powers or duties are assigned or transferred under the provisions of any act of the general assembly shall constitute a successor as to such matters and not a new authority." It further provides, in subsection (c): "The assignment or transfer of any of the functions, powers or duties of a department, institution or agency, or any division thereof, under the provisions of any act of the general assembly shall not affect any action or proceeding, civil or criminal, pending at the time of such assignment or transfer, and the proper party shall be deemed substituted in such action by operation of this section without motion or order."

There can be no question that the powers and duties formerly granted to and imposed upon the commission on fine arts in §§ 3533 and 3534 were transferred to the public works commissioner by §§ 747b and 748b of the 1951 Cumulative Supplement. It is equally clear, however, that so far as trusts are concerned the only thing transferred was the power

to act as trustee. That was the only power which had been granted to the commission by act of the General Assembly. It was, therefore, the only power which could be transferred by act of the General Assembly. No specific trusteeship had been either granted to the commission or transferred to the commissioner by the General Assembly. Consequently, subsection (a) of § 278 could not operate to constitute the public works commissioner a successor trustee of the Ella Burr McManus trust. Nor could subsection (c) of that section operate to substitute him as a trustee. Neither of these subsections comes into operation except as to powers or duties which had been transferred. The trusteeship in question was not transferred.

It follows that a vacancy in the trusteeship under the will of Ella Burr McManus was created by the abolition of the commission on fine arts. Section 6888 of the General Statutes empowers the Court of Probate having jurisdiction of a trust to appoint a successor trustee when a vacancy occurs and when no provision for such contingency is made by law or by the instrument from which the appointment is derived. It clearly was not the intention of the testatrix that the trust in question should fail simply because the trustee named by her should become incapacitated. No provision is made either in the will itself or by law for the contingency of a vacancy in the trusteeship. Accordingly, the Probate Court for the district of Hartford was empowered to appoint successor trustees. 3 Scott, Trusts, §§ 388, 397.

The third question propounded is whether, if there was a vacancy in the trusteeship, the court was compelled by force of statute to appoint the public works commissioner to fill the vacancy. The question refers specifically to § 738b and §§ 741b-749b of the Cumula-

tive Supplement of 1951 and to § 278 of the General Statutes as being the statutes which might require such appointment. These include the statutes which have already been discussed and it is difficult to see how they can be interpreted so as to compel the appointment of the public works commissioner. Even if they could be so interpreted, it would not follow that they were effective to control the Probate Court. The supervision of trusts, including the appointment of successor trustees, is a purely judicial function. From time immemorial it has been a jurisdiction exercised by courts of equity. *Preston* v. *Preston,* 102 Conn. 96, 121, 128 A. 292; *Dailey* v. *New Haven,* 60 Conn. 314, 324, 22 A. 945; *Parsons* v. *Lyman,* 32 Conn. 566, 572. It is not a legislative power. Consequently, any statute which purported to direct the courts as to whom to appoint as a successor trustee would be unconstitutional. *Bridgeport Public Library & Reading Room* v. *Burroughs Home,* 85 Conn. 309, 318, 82 A. 582; 2A Bogert, Trusts & Trustees, p. 225.

The fourth question raises the issue whether the Probate Court in appointing the defendants as trustees violated the general intent of the testatrix. The contention of the plaintiffs is that the will demonstrated an intent that the trust remain permanently in the management of public officials. The basis of this is that the will directed that the memorial should be erected upon the property of either the state of Connecticut or the city of Hartford and that the trustee originally named, the state commission of sculpture, was the only official body, and the public works commissioner is the only official, authorized to approve the location of such a memorial. This last assertion is not strictly accurate, because by virtue of § 3534 and its precursors the original trus-

tee had no power, in the execution of any such trust, to determine the site of a memorial except with the approval of the General Assembly or of the municipality concerned. That aside, it is clear from the will that, secondary only to the dominant intention of providing a memorial for her father, it was the urgent desire of the testatrix that the memorial possess real artistic merit. *Seymour* v. *Attorney General,* 124 Conn. 490, 496, 200 A. 815. The Probate Court might reasonably have concluded that the individuals appointed by it, with their background of experience, would be better qualified to fulfil this desire than any public official would. In any event, a Probate Court in making such an appointment, in the absence of any direction to the contrary in the trust instrument, has a wide discretion. There was no abuse of that discretion in the present case.

All four questions are answered in the negative.

No costs in this court will be taxed against any party.

In this opinion the other judges concurred.