(27 Misc. Rep. 708.)

### STEWART v. BUTLER et al.

(Supreme Court, Special Term, New York County. June, 1899.).

1. DISMISSAL AND NONSUIT—VEXATIOUS LITIGATION.
    A complaint may be dismissed on motion, where the litigation is vexatious, clearly without merit, and not brought in good faith; plaintiff being an insolvent.

2. SAME—SUFFICIENCY OF EVIDENCE.
    Plaintiff claims to be the heir of a person alleged to have died intestate in 1876, leaving a widow who died in 1886. In 1891 plaintiff brought ejectment to recover possession of certain premises owned by the deceased at his death, and the complaint was twice dismissed on the ground that plaintiff had not proved that he was an heir of the deceased. An appeal was taken, but not prosecuted, and plaintiff never paid any of the costs awarded against him, and is irresponsible. At the time of beginning the ejectment suit at bar, plaintiff began several other similar actions against persons owning and holding real estate which was owned by the deceased at his death. In his motion to dismiss the action, defendant alleges, and plaintiff does not deny, that the suit is brought in bad faith, without any reasonable expectation of success, with full information of the want of relationship between plaintiff and the deceased, and that the deceased died testate, and his will was probated, and that the action is to compel defendant to buy peace. Counsel for plaintiff do not make affidavit that they believe plaintiff has a cause of action, nor is it shown how the 20-years statute of limitations is to be avoided. It is not alleged that plaintiff has any other or further evidence as to his status as heir than that produced at the trial in 1891. Held, that the action will be dismissed as vexatious and harassing.

Ejectment by Alexander Stewart against Helen C. Butler and others. Motion to dismiss the action. Granted.

Hart & Hopkins, for plaintiff.

Evarts, Choate & Beaman (Horace Russell and Jabish Holmes, Jr., of counsel), for defendants.

SCOTT, J. This is an action for ejectment. The defendants move —First, that the plaintiff's attorneys be required to produce and file

written evidence of their authority to commence this action; and, secondly, that the complaint be dismissed, because the action is vexatious and clearly without merit, and not brought in good faith, but solely as an endeavor to extract money from the defendants as the price of peace, and because of the irresponsibility of the plaintiff. So far as the first branch of the motion is concerned, it is expressly authorized by sections 1512 and 1513 of the Code of Civil Procedure, and must be granted, the plaintiff's proceedings being stayed until such authority is produced. The second branch of the motion requires more extended consideration. It appeals to the inherent power of the court to exercise such efficient control over every proceeding in an action as to effectually protect every person actually interested in the result from injustice, oppression, or fraud, and to prevent the court itself and its process from being made the instrument of wrong. The inherent power, though seldom appealed to, has yet been exercised not infrequently in this country and in England. As was said by Judge Ingalls in People v. Hektograph Co., 10 Abb. N. C. 359, "The court is vested with the control of its process, records, and proceedings so far as to prevent their being improperly employed, through fraud or collusion, to injure the citizen, or to deprive him of his just rights;" and he cites a large number of cases to support and illustrate the proposition thus laid down. It is true that no statutory authority can be found for dismissing a complaint because the action is clearly vexatious, frivolous, or groundless, but this fact alone is no answer to the assertion of the power of the court so to do. No statutory provision can be found for staying proceedings in an action until the costs of a former action have been paid, yet the courts have exercised that power from the earliest times, and exercise it now almost daily. The right to do so is based upon the same inherent power of the court to which the defendants in this action appeal; that is, the power to prevent a multiplicity of actions and harassing and vexatious litigation. This inherent power of the court has, in several notable instances, been declared and exercised in the English courts. A leading case is Bank v. Pooley, 54 Law J. Q. B. 449. The action had been brought by Pooley to recover damages for the alleged wrongful acts of the bank in fraudulently procuring the plaintiff to be adjudicated a bankrupt. Two former actions by Pooley, not against the bank, but against other defendants, for whose actions the bank was responsible, had been dismissed, and Pooley had failed to pay the costs therein. A motion was made to dismiss the action as vexatious and harassing, or to stay proceedings until the costs of the former actions had been paid. The court below does not seem to have given much consideration to the motion to dismiss, but the house of lords placed its decision squarely upon the proposition that the court had inherent power to dismiss the action as frivolous, and should do so. The lord chancellor, in the course of his opinion, said:

"In the view which I take of this case, it is not necessary to determine whether the view of the facts taken by the court of appeal, that the two actions brought by the respondent were not substantially between the same parties,

was right or not. The judges of the court of appeal do not seem to have addressed themselves (and I think that your lordships would presume that the course of the argument did not really direct them) to the other questions, whether the action should be dismissed altogether as frivolous and vexatious. * * * In my opinion, the order which the court of appeal ought to have made was to dismiss the action altogether as frivolous and vexatious. Upon that point I entertain a very clear opinion. Before the rules were made under the judicature act, the practice had been established to stay a manifestly vexatious suit which was plainly an abuse of the authority of the court, although, so far as I know, there was not at that time any statute or rule enabling the court to do it. The power seemed to be inherent in the jurisdiction of every court of justice to protect itself from the abuse of its own procedure."

### In the same case Lord Blackburn said:

"At common law originally the judgment of the court was always obtained either by a demurrer or any other proceeding upon which the record gave a judgment, or an issue was taken of fact and a verdict * * * was given upon the record. But from early times (I rather think, though I have not looked at it enough to say, from the earliest times) the court had inherently in its power the right to see that its process was not abused by a proceeding without reasonable grounds, so as to be vexatious and harassing. * * * The court had the right to protect itself against such an abuse; but that was not done upon demurrer, or upon the record, or  upon the verdict of a jury, or evidence taken in that way, but it was done by the court informing its conscience upon affidavits, and by a summary order to stay the action which was brought under such circumstances as to be an abuse of the process of the court, and in a proper case they did stay the action."

The conclusion arrived at by the house of lords, though reached after the judiciary act of 1873, was not based, as the lord chancellor expressly declared, upon any new power conferred by that act, and the same principle had frequently been enunciated and applied before that act was passed. In 1875 the court of chancery stayed an action against the clerk of the petty bag office as frivolous and vexatious and an abuse of the power of the court. Castro v. Murray, 10 Exch. 213. In 1876 the court of queen's bench stayed actions brought against the members of a military court of inquiry, wherein it was alleged that the defendants had conspired to make, and had made, false statements respecting the plaintiff, an officer of the army, as a result of which he had been placed on half pay. The motions to stay the actions were based upon the ground that they were frivolous and vexatious and an abuse of the process of the court. It had already been held in Dawkins v. Lord Rokeby, 7 H. L. Cas. 744, that such an action would not lie. The motions were granted on the authority of Castro v. Murray, supra. Blackburn, J., said:

"Then there is a more material thing to consider; and that is, have we, although we see the action is utterly groundless, a right to stop it summarily? I grant that is a jurisdiction which in all cases should be carefully exercised by the court. But in Castro v. Murray, which was a stronger case than this, the court of exchequer stayed an action against a public officer charging him with not performing a public duty, the action being absolutely without foundation. * * * I therefore think that we should stay these actions." Dawkins v. Prince Edward of Saxe Weimar, 1 Q. B. Div. 499.

In Edmunds v. Attorney General, 47 Law J. Ch. 345, which was an action to recover a pension, it was stayed as frivolous and vexatious and an abuse of the process of the court. The Vice Chancellor (Malins) said:

"On principle, I am of opinion that where you find a litigant like Mr. Edmunds, who will have recourse to such a series of vexatious and improper litigations as he has had recourse to, and, when a decision has been given against him, will persist in treating it as a mere nullity,—for he has considered the decision of the arbitrators as a nullity, he has considered my decision of January, 1876, a nullity, and he has considered the decision of Vice Chancellor Bacon, in February, 1877, a nullity,— when such a litigant is found I think it a most wholesome doctrine that any court should have the power of stopping such a litigation."

The same inherent power of the court was invoked and applied in Jacobs v. Raven, 30 Law T. (N. S.) 366. In each of the cases above cited the actions were disposed of, as is sought to be done in the present case, on motion based upon affidavits. The power of a court of equity to entertain an action to restrain vexatious, annoying, and harassing suits at law is well recognized (2 Story, Eq. Jur. [13th Ed.] p. 211), and such an action has been maintained in this state to restrain groundless and vexatious suits in other states. Claflin v. Hamlin, 62 How. Prac. 284. It is not necessary, however, to resort to an affirmative action in equity to accomplish the purpose. "The more usual course in modern times, especially in this state, has been to grant the same relief on motion as might be obtained on formal suit." Lowber v. Mayor, etc., of City of New York, 5 Abb. Prac. 325. There seems to be no doubt of the inherent power of the court, in the absence of any statute on the subject, to dismiss or perpetually stay groundless, vexatious, and harassing litigations. As was said by Baron Bramwell, however, in Castro v. Murray, supra, "It is always a strong measure to prevent a plaintiff from going on with his action;" and for that reason it becomes necessary to examine with care the reasons assigned for such a motion as the present. The complaint alleges the death of Alexander T. Stewart on April 10, 1876, leaving a widow, who died on October 25, 1886, but no heirs of his body; that, at the time of his death, said Stewart was seised of the property described in the complaint; that he died intestate, leaving certain heirs at law and next of kin, of whom plaintiff is one; that, at the time of the death of said Stewart, plaintiff was of lawful age, of the blood of said Stewart, and one of his heirs at law, and then became and still is seised in fee simple and the owner of the premises described in the complaint, and entitled to the possession thereof; that the defendants, without plaintiff's knowledge or consent, went into possession of the premises, and unlawfully hold and occupy them. It appears: That the plaintiff heretofore commenced an action of ejectment against one Henry Hilton, in the late court of common pleas of this county, to recover possession of certain premises on Thirty-Fourth street, in this city, which were owned by A. T. Stewart at his death, and subsequently became the property of said Hilton. That, in that action as in this, the plaintiff claimed to be an heir at law of said Stewart, and the questions sought to be raised in that action were the same as those sought to be raised in this, to wit, the plaintiff's relation as heir at law to said Stewart, and the intestacy of said Stewart, the only difference between that action and this being that a different piece of property was involved, and a different defendant was named.

That said action in the court of common pleas was commenced on July 9, 1891, and upon the trial the complaint was dismissed on the ground that the plaintiff had not proved that he was an heir at law of A. T. Stewart, and a judgment was therefore duly entered dismissing the complaint. That the plaintiff thereafter elected to take a new trial under the statute, and upon such trial his complaint was again dismissed upon the ground that he had failed to show that he was an heir at law of A. T. Stewart, and on December 9, 1893, a second judgment was entered dismissing the complaint, and for $150.04 costs in favor of the defendants. That thereafter, and on December 29, 1893, the plaintiff appealed to the general term of the court of common pleas from said last-mentioned judgment, but took no steps to prosecute said appeal, except to obtain extensions of time within which to make and serve a case on appeal. That on March 18, 1898, upon due notice to the attorney then representing the plaintiff, a motion was made before the appellate division of this court to dismiss said appeal for failure to prosecute it according to the rules and practice of the court, which motion was granted, and on March 31, 1898, an order was duly entered dismissing said appeal, with costs. That the plaintiff has never paid any part of the costs awarded against him, and is wholly irresponsible, having no property, real or personal, out of which can be collected any judgment for costs which may be recovered against him by the defendants. That, at or about the time of commencing the present action, the plaintiff began several other similar actions against different defendants owning and holding real estate which was owned by A. T. Stewart at the time of his death. It is alleged by the defendants, and is not denied by the plaintiff, that this action is brought in bad faith, without any reasonable expectation of success, with full information on the part of the plaintiff and his attorneys that the plaintiff was in no wise related to A. T. Stewart, and that the said Stewart left a last will and testament, which was duly proved before the surrogate of this county in April, 1876, and that the action is brought for the sole purpose of annoying and harassing the defendants in the hope that they may be induced to pay a sum of money to buy their peace, rather than submit to vexatious and expensive litigation. Neither the plaintiff, nor his attorney, nor any one in his behalf submit any affidavits controverting any allegation of the defendants' affidavit. Although the plaintiff is charged in most distinct terms with having brought the action in bad faith and as a mere blackmailing scheme, he does not even swear to his bona fides. By his silence he stands before the court as admitting that he has brought a baseless action, for which he knows there is no foundation, in the hope alone of extorting peace money from defendants. Of course, the mere fact that a complaint in a similar action has twice been dismissed on the trial for failure of proof is not of itself conclusive that upon the trial of this action sufficient proof might not be produced, but it is most significant that the plaintiff does not allege that he has any other or further evidence than that which he produced upon the two trials of his action against Hilton, and what is even more significant is the fact that although

he has been able to find attorneys to bring this action, and counsel to argue against a dismissal of the complaint, he produces no affidavit or certificate from any counsel that he believes that the plaintiff has in fact a cause of action. Upon the face of the complaint it appears that A. T. Stewart died more than 20 years ago, and that the plaintiff was then of full age, which at once suggests an obvious defense to any claim which the plaintiff may ever have had, yet he offers no hint or suggestion as to how he expects to avoid the inevitable defense that the statute of limitations stands as a bar to any recovery. Upon the case as presented by the affidavits, I cannot escape the conclusion that this is a baseless, vexatious, 'and harassing action, begun with no hope or expectation of ultimate success, but only in the hope that the defendants may find it easier and cheaper to buy off the plaintiff and his attorneys than to contest the action. To such an action the court should lend no countenance, but should, in my opinion, exercise its undoubted inherent power of refusing to permit the action to proceed.

Motion granted, with $10 costs.